503 P.2d 415

**Arnold ONG, a married man and Virginia Ong, a widow dba Gene's Modern Market, Appellants,**

**v.**

**PEPSI COLA METROPOLITAN BOTTLING CO., INC., a corporation, Appellee.**

**No. I CA–CIV 1566.**

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 28, 1972.

Rehearing Denied Dec. 29, 1972.

Review Denied Jan. 23, 1973.

Miller, Pitt & Feldman, P. C. by David J. Leonard, Tucson, Boltz & Odegaard by Earl F. Boltz, Jr., Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Harry J. Cavanagh, George H. Mitchell, Phoenix, for appellee.

CASE, Judge.

This is an appeal from a judgment, after a jury trial, in favor of defendant Pepsi Cola Metropolitan Bottling Co., Inc., and against the plaintiffs, Arnold Ong and Virginia Ong, his mother. The parties will be referred to as they appeared in the trial court.

The facts viewed in a light most favorable to sustaining the judgment are as follows:

Plaintiffs are owners of a supermarket in Glendale, Arizona, known as Gene's Modern Market. The market was operated by plaintiff, Arnold Ong, his wife, Louise Ong, and a few other employees. In January 1967, the defendant offered to install a visual Pepsi Cola merchandising machine (hereinafter referred to as "machine") in plaintiffs' store. There was to be no rental or installation costs and plaintiffs were to receive the initial stock of Pepsi Cola free of charge. Plaintiffs were only obligated to pay for the additional Pepsi Cola used to restock the machine.

Plaintiffs accepted defendant's offer and the machine was installed by defendant in February 1967. The installation was done by defendant's employee, Mr. Fred Duran. The machine was placed at the end of a gondola which was located across from a checkout counter. The electrical outlet closest to the machine was located at this checkout counter. Mr. Duran found that the molded cable which was attached to the machine was not long enough to reach the outlet at the checkout counter. In order to effectuate the installation, he cut off the molded three-prong male plug, spliced on an additional length of flexible cord, brought the cord over the top of the machine, wrapped the extension cord around a metal conduit which extended from the ceiling and made a second splice of the extension cord to the molded plug. To complete the installation, Duran placed a two-prong adapter on the three-prong plug of the machine and inserted it in the top outlet of the two-outlet receptacle at the bottom of the metal conduit located at the checkout counter (hereinafter the checkout counter in question will be referred to as "counter 3").

A few weeks after the machine was installed, Louise Ong complained that she smelled smoke. At the time of the incident, Louise Ong was working at checkout counter 2 because counter 3 was used only when business was heavy. She and Mr. Ong looked for the source of the smell and discovered it to be emanating from the machine cord, approximately where the second splice was located. Plaintiff saw that the area of the splice was smoldering and smoking and therefore promptly pulled the plug. Plaintiffs did not call defendant because their deliveryman was due the next day. The machine was left unplugged overnight.

The following day, plaintiffs related the smoking incident to defendant's route manager, Bob Warren, who happened to accompany the deliveryman to plaintiffs' store. Mr. Warren telephoned defendant and a repairman, Jack Woodall, was sent out. Mr. Woodall found that the area of splice two was brittle as a result of the smoldering. He cut off this piece of the cord, attached a new plug to the remaining cord and again plugged the cord into the top outlet at counter 3. He checked the machine to make sure it was operational and then left the store.

The only additional evidence offered, relating to trouble with the machine prior to the fire, was testimony by an employee of

an insurance adjusting company who had taken a statement from the plaintiff, Arnold Ong. The statement contained language to the effect that one night, some time after the smoking incident and prior to the fire, Louise Ong told her husband that one of the cords at counter 3 had felt warm to her. Mr. Ong immediately drove to the store, checked all the cords and found them to be cool.

On 13 April 1967, a fire occurred, originating in an area near checkout stand number 3. On 23 June 1967, plaintiffs settled their claim against their insurance company for $68,000.

At trial, there were two specific opinions offered as to the cause of the fire. Plaintiffs' witness, John Senne, a professional accident and fire investigator, testified to the effect that the fire could have resulted from a faulty electrical connection at the point of splicing. The other opinion was offered by defendant's witness, Dr. Nabours, an electrical engineer. He testified that the fire could have been caused by a dislodging or tipping of the machine plug out of the receptacle. He also testified that use of an octopus plug in the receptacle could have produced the fire by igniting nearby papers, which plaintiffs admitted were present between the receptacle and cash register at counter 3.

The jury returned a verdict against the plaintiffs and in favor of the defendant. Thereafter, plaintiffs timely made a motion for a new trial, which motion was denied and this appeal follows.

The plaintiffs present numerous questions and raise several issues for our review. We will deal with the questions presented which we deem dispositive of this appeal.

■ Prior to determining this appeal on the merits, we will deal with defendant's argument that the instructions to the jury, challenged on appeal by plaintiffs, should not be considered by this Court because of plaintiffs' failure to set forth each challenged instruction in haec verba in the appendix to the opening brief as required by Rule 5(b) 10 of the Rules of the Supreme Court, as amended, 17 A.R.S. which states:

"10. Instructions given or refused, of which a party complains or relies on, shall be set forth in haec verba in the appendix to the brief."

The Supreme Court and this Court have held on numerous occasions that under such circumstances the reviewing court has no obligation to consider the alleged instructional errors. State v. Hill, 11 Ariz. App. 230, 463 P.2d 125 (1969); State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916 (1968).

The instant ligitation, however, presents a problem similar to the one faced by this Court in Hoeffel v. Campbell, 16 Ariz.App. 577, 494 P.2d 777, 778 (1972), wherein we stated:

"The Court does note that the instructions were set forth *in haec verba* in the abstract of record and that pursuant to written motion the appellants did include the challenged instructions in an appendix to its reply brief after appellee's answering brief had pointed out appellants' failure. Under the facts of this case the Court has determined that, notwithstanding appellants' failure to comply with Rule 5(b) 10, it will consider the alleged instructional error."

In the case at bar, plaintiffs have made a motion, which motion has been granted by this Court, allowing plaintiffs to include the questioned instructions as an appendix to the reply brief. We will therefore proceed to consider the alleged instructional errors.

## CONTRIBUTORY NEGLIGENCE

The initial question posed by plaintiffs is whether the trial court committed reversible error by instructing the jury on Arnold Ong's negligence as a matter of law resulting from a violation of an ordinance.

The instruction, as given by the trial court, is set forth as follows:

"It may become necessary for you to consider in your deliberations certain laws of the City of Glendale, Arizona, which were in effect at the time of this fire in question. I will read them as follows: Section 210–21, entitled Outlet Devices: 'Outlet devices shall have a rating not less than the load to be served and shall conform to the following:

Sub-Section B. Receptacles: When connected to circuits having two or more outlets, receptacles shall conform to the following:

15–amp circuits not over 15–amp rating.

20–amp circuits, 15 or 20–amp rating.

30–amp circuits, 30–amp rating.

50–amp circuits, 50–amp rating.

Receptacles connected to circuits having different voltages, frequencies, or types of current (AC or DC) on the same premises shall be of such design that attachment plugs used on such circuits are not interchangeable.

Grounding receptacles rated at 15 or 20 amperes and installed in circuits of less than 150 volts between conductors shall be approved for use only on potentials less than 150 volts.

Grounding receptacles rated at 15 amperes and installed in circuits of 151 or 300 volts between conductors shall be approved for use only on potentials not less than 151 volts.

Receptacles rated at 15 amperes connected to 15 or 20 ampere branch circuits serving two or more outlets shall not supply a total load in excess of 12 amperes for portable appliances.'

Section 400–5, entitled Splices, Provides:

Flexible cord shall be used only in continuous lengths without splice or tab.'

Should you find that any party to this suit violated any of the foregoing laws, then that party would be negligent as a matter of law and you should then consider the issue of whether that negligence was a proximate cause of plaintiff's damage."

The gravamen of plaintiffs' argument in regard to this instruction is based on several theories. Plaintiffs argue that there was no evidence of a violation of the National Electrical Code § 210–21 but even if the defendant's expert's testimony is sufficient to give rise to an inference of a code violation, there was no evidence that violation of this section of the code was the proximate cause of the fire. Plaintiffs also complain of the form of the instruction because of the ambiguities it presents. They claim that the jury was allowed to speculate as to which party violated which section of the code and that a finding by the jury that Arnold Ong was responsible for the splice as a matter of law could have accounted for the verdict where no evidence was presented to support this theory. We are in agreement with plaintiffs' objections to the instruction as given by the trial court.

■ Under Arizona law it is reversible error for a trial court to give an instruction on a legal theory which is not supported by evidence even if such theory is raised by the pleadings. Spur Feeding Co. v. Fernandez, 106 Ariz. 143, 472 P.2d 12 (1970); Tucson Utility Supplies, Inc. v. Gallagher, 102 Ariz. 499, 433 P.2d 629 (1967). The reasoning behind this rule was first espoused by the Arizona Supreme Court in Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325, 331 (1947), wherein the Court stated:

"An instruction not based upon the evidence in the case is misleading and calculated to induce the jury to suppose that such a state of facts, in the opinion of the court, is possible and may be considered by them."

■ In the instant litigation, this principle must be applied to the issue of plaintiffs' contributory negligence. It is elementary that a plaintiff will not be denied

recovery merely because he may have been guilty of statutory negligence unless that negligence was the, or a, proximate cause of his injury and resulting damage. Valley Transportation System v. Reinartz, 67 Ariz. 380, 197 P.2d 269 (1948); Zancanaro v. Hopper, 79 Ariz. 207, 286 P.2d 205 (1955). This rule was also affirmed by this Court in McDowell v. Davis, 8 Ariz. App. 33, 442 P.2d 856, 859 (1968), wherein the Court stated:

" . . . [T]he court in Mantovani [Mantovani v. Green, 90 Ariz. 376, 368 P.2d 448 (1962)] did not repudiate the well known principle that in order for negligent acts or omissions to constitute 'contributory negligence', it must be proven that plaintiff's acts or omissions proximately caused his injury. It is elementary that a plaintiff cannot be denied recovery for his negligence unless such negligence is the proximate cause of his injury. See Salt River Valley W. U. Assn. v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937); Stearman v. Miranda, 97 Ariz. 55, 396 P.2d 622 (1964); and Serrano v. Kenneth A. Ethridge Contracting Co., 2 Ariz.App. 473, 409 P.2d 757 (1966)."

■ The Arizona Constitution, Art. 18, Sec. 5, A.R.S., requires that the issue of contributory negligence be a jury question. However, the Supreme Court of Arizona has stated that there must be evidence presented to infer that the issue of contributory negligence exists. City of Phoenix v. Brown, 88 Ariz. 60, 352 P.2d 754 (1960). The Supreme Court has dealt with the above rule and reconciled it with the constitutional mandate in Citizens Utilities Co. v. Firemen's Ins. Co., 73 Ariz. 299, 240 P. 2d 869, 872 (1952). The Court stated:

"The second limitation is as set out in Humphrey v. Atchison, T. & S. F. Ry. Co., 50 Ariz. 167, 70 P.2d 319, 322: 'The next question is whether there was evidence to go to the jury on the issue of contributory negligence. In Arizona the existence of contributory negligence is a question of fact for the jury and not of law for the court. We think, however, that this rule does not go to the extent of permitting a jury to find contributory negligence on the part of a plaintiff when there is no evidence from which any reasonable man might reach such a conclusion, as such a finding would clearly be actuated by passion and prejudice, and it would be the duty of the court to set it aside. Unless, therefore, there was some substantial evidence from which a reasonable man might have inferred it existed, the court should not have submitted the issue to the jury. * * *' See also Calumet & Arizona Mining Co. v. Gardner, 21 Ariz. 206, 187 P. 563; Arizona Power Co. v. Hayes, 24 Ariz. 322, 209 P. 280; Bowers v. J. D. Halstead Lumber Co., 28 Ariz. 122, 236 P. 124; Twohy Bros. Co. v. Kepon, 21 Ariz. 606, 193 P. 296."

■ As to one part of the instruction in question, we are of the opinion that it was so ambiguously worded that the jury may very well have been misled. A thorough scrutiny of the facts has failed to uncover any evidence to support a finding that plaintiffs were responsible for the splicing. It is uncontroverted that defendant was completely in charge of the machine's installation and further, there was absolutely no evidence to show plaintiffs' participation in either the installation or later electrical modification. A reading of the instruction leads us to believe that the jury could have found the splice to be the cause of the fire and, in addition, because of the wording involved that plaintiff Ong had some responsibility for the splice. This finding is completely unsupported by the evidence and it was therefore error for the trial court to give the instructions as it did.

■ Our second objection to the instruction in question relates to the technical nature of the National Electrical Code § 210–21 and the failure of the record to disclose any explanation of the ordinance

or its applicability to the instant case under the facts presented at trial. We agree with defendant that it was not necessary for the code violation to be referred to by its specific number and page so long as the substance of the violation has been brought out in the evidence. We are unable to find the substance of this code section contained in the testimony. Since we are unable to determine how the National Electrical Code § 210–21 was violated, it would appear impossible to make a finding that the violation of this section was a proximate cause of the fire. The code section deals with an unrated receptacle of inadequate amperage capacity, not a dislodging of a plug which defendant urged as a possible proximate cause of the fire.

It is readily apparent that a jury can be misled where a technical manual such as § 210–21 is left unexplained. In a personal injury action involving an instruction similar to the one in question, the Colorado Supreme Court held that the giving of an instruction setting forth certain sections of city ordinances constituting building and electrical codes of the city, but not giving an explanation of the ordinance, its purpose, or applicability of the sections thereof to any issues in the case constituted reversible error. Crosby v. Kroeger, 138 Colo. 55, 330 P.2d 958 (1958). This reasoning is sound and is readily applicable to the case at bar. It was incumbent on the trial court, absent any explanation in the record by defendant, to offer some explanation of the National Electrical Code § 210–21 so that the jury could intelligently pass on its applicability to the facts submitted. A failure to explain the meaning of the code section necessarily resulted in a failure to explain how a violation of § 210–21 could have caused the fire.

The other questions presented are not determinative of this appeal and do not require our consideration. Based on the foregoing, the cause is hereby reversed and remanded for a new trial.

STEVENS, P. J., and DONOFRIO, J., concur.