830 P.2d 871

Karla **TIMMONS,**
**Plaintiff/Appellee/Cross–Appellant,**

v.

**CITY OF TUCSON, a municipality; Cressworth Lander and Linda Lander, husband and wife, Defendants/Appellants/Cross–Appellees.**

No. 2 CA–CV 90–0303.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 24, 1991.

Review Denied June 16, 1992.*

---

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Stompoly & Stroud, P.C. by Don Awerkamp and Mary Judge Ryan, Tucson, for plaintiff, appellee, cross-appellant.

Gabroy, Rollman & Bosse, P.C. by John Gabroy and Ronna L. Fickbohm, Tucson, for defendants, appellants, cross-appellees.

## OPINION

FERNANDEZ, Presiding Judge.

After a jury trial, appellee Karla Timmons was awarded $200,000 in compensatory damages against the City of Tucson and Cressworth Lander, director of the City's Department of Community Services (collectively referred to as the City), in her reverse discrimination lawsuit. She was also awarded $15,000 in punitive damages against the Landers only. The court subsequently awarded Timmons attorney's fees of $71,666.66. Both parties have appealed. We agree that reversible error occurred and remand for a new trial.

Cressworth Lander has been the director of the Department of Community Services for the City of Tucson since the department was formed in 1987. The department has 134 full-time employees and is charged with providing housing for low-income residents. Its duties include owning and operating rental units, subsidizing rents, and rehabilitating or replacing housing units, assisting in relocating residents and businesses, and providing physical improvements such as streets, sidewalks, and sewage facilities under a federal grant program. In September 1988, the city began accepting applications for two rehabilitation/relocation specialists II in the Community Conservation and Development Division of the department.

The City's Personnel Department conducted the initial applicant screening by analyzing and rating the information in the applications and by scoring the applicants' answers in a technical board interview. The Personnel Department certified the top eight people as being qualified for the positions. Timmons was ranked third on the list, and Annie Sykes was ranked seventh. Timmons is white, and both Lander and Sykes are black. Two supervisors in the division interviewed the eight people and recommended to the division head, Rudy Gallego, that Timmons be hired. They also ranked Sykes seventh on their list. Gallego agreed with the supervisors, signed the requisition form, and passed it on to Lander. Under the City's civil service rules, a department head has discretion to select any of the candidates certified for the position.

When Lander received the recommendation from Gallego, he asked Gallego to

come to his office. Gallego testified that when he walked in, Lander threw the requisition form at him. Gallego then testified as follows:

'I'll be damned,' he says to me, 'if I'm going to hire a white on the face of a black on the list.'

Q. Then what did he tell you to do with the personnel requisition form that is Exhibit 3?

A. He said, 'Take [c]are of the problem. Either you change Annie Sykes' name with—for Karla Timmons'—in other words, put Annie Sykes' name on there and take Karla Timmons' name off—'or there will be no hiring.'

A subsequent meeting was held with Lander, Gallego, and the two division supervisors who had conducted the interviews. One of the supervisors testified that Lander said at that meeting "that he was a director, and he was going to hire whoever the heck he wanted, and that if we did not hire two minorities, that there was going to be no hiring at all." The supervisor also testified that Lander had said, "I'm telling you, if you do not hire Annie Sykes, there is going to be no hiring." The other supervisor testified that Lander had indicated during the meeting that if a black was on a certification list, he or she should be hired. There was also testimony that Lander was uninterested in knowing the reasons why the interviewers had recommended Timmons and that he did not care about the qualifications either of Timmons or the other candidates. In addition, there was evidence that on another occasion, Lander had insisted on hiring an applicant because he was black.

The City presented evidence that Lander was concerned because Gallego and his two supervisors had a pattern of not recommending blacks for positions in their division. There was also evidence that Lander and Gallego were engaged in a personal dispute at the time of trial. In addition, the City produced evidence of the qualifications Sykes possessed for the job.

Timmons introduced evidence that at the time of the 1980 census, 3.7% of the general population of Tucson was black. At the time the position was filled, 4.6% of the employees of the City of Tucson were black. In the department Lander headed, 13.3% of the employees were black.

After Sykes was selected for the position, Timmons filed a complaint with the City's affirmative action office, charging that the city had refused to hire her because of her race. After an investigation conducted by the director of personnel, the city's equal employment opportunity officer, a representative of the city attorney's office, and an assistant city manager, it was determined that the selection was proper. Sykes was then hired for the position.

Timmons then filed this lawsuit, charging Lander and the City with employment discrimination on the basis of race pursuant to the employment discrimination section of the Arizona Civil Rights Act, A.R.S. §§ 41–1461 through 41–1465, and with violating Timmons's right to make contracts because of her race pursuant to 42 U.S.C. § 1981. She sought only monetary damages and did not ask to be hired for the next available position.

The City contends on appeal that the trial court erred in 1) instructing the jury on an affirmative defense that it had not raised, 2) refusing to give two of the City's requested instructions, 3) submitting the issue of punitive damages to the jury, 4) instructing the jury on mitigation of damages, 5) commingling the federal and state claims and instructing the jury on the remedies available under each claim, 6) submitting equitable claims to the jury, 7) admitting evidence on Lander's subsequent retaliation against Gallego, 8) improperly calculating the award of attorney's fees, and 9) denying the City's motion for new trial or judgment notwithstanding the verdict. The City also contends that the verdict was not justified by the evidence and was contrary to law.

Timmons has cross-appealed, also contending that the court erred in calculating the attorney's fee award. In addition, she contends that the court improperly dismissed her § 1981 claim against the city,

denied her prejudgment interest, and denied an item of taxable costs.

## COMMINGLING OF STATE AND FEDERAL CLAIMS

■ Timmons pursued two claims in this case, a state claim under the Arizona Civil Rights Act and a federal claim under 42 U.S.C. § 1981. The state claim was against both the City of Tucson and the Landers, while the federal claim was against the Landers only. The state statutes are modeled after the federal employment discrimination laws, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. As a result, Title VII case law is persuasive in interpreting the Arizona statute. *Higdon v. Evergreen International Airlines,* 138 Ariz. 163, 673 P.2d 907 (1983).

Only equitable relief is available under both Title VII and the Arizona act. Our statute provides:

If the court finds that the defendant has intentionally engaged in ... an unlawful employment practice alleged in the complaint, the court may enjoin the defendant from engaging in such unlawful employment practice and order such affirmative action as may be appropriate. Affirmative action may include, but is not limited to, reinstatement or hiring of employees with or without back pay payable by the employer ... or *any other equitable relief* as the court deems appropriate.

A.R.S. § 41–1481(G) (emphasis added). The federal statute is similarly worded. 42 U.S.C. § 2000e–5(g). Both statutes provide for the recovery of back pay, a remedy that has been held to be equitable in nature. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

■ Both statutes also permit the recovery of front pay as equitable relief. *Edwards v. Occidental Chemical Corp.,* 892 F.2d 1442 (9th Cir.1990); *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Front pay is a monetary award designed to provide the salary differential a claimant would have received if he or she had been hired for the position. *Edwards, supra.*

■ It is clear, however, that monetary damages for items such as emotional distress and mental anguish are not available in statutory employment discrimination cases. *Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456 (7th Cir.1990); *Bennett v. Corroon & Black Corp.,* 845 F.2d 104 (5th Cir.1988), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989); *Muldrew v. Anheuser–Busch, Inc.,* 728 F.2d 989 (8th Cir.1984); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982); *Shah v. Mt. Zion Hospital & Medical Center,* 642 F.2d 268 (9th Cir.1981); *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981); *DeGrace v. Rumsfeld,* 614 F.2d 796 (1st Cir. 1980); *Harrington v. Vandalia–Butler Board of Education,* 585 F.2d 192 (6th Cir.1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979); *Pearson v. Western Electric Co.,* 542 F.2d 1150 (10th Cir.1976); *see also Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977).

Nothing Timmons has cited to us convinces us that the law is otherwise. Contrary to her contention, the Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), ruled only that the claimant there had presented evidence of an actionable claim; it did not address the issue of compensatory damages. In *Muldrew v. Anheuser–Busch, Inc.,* 554 F.Supp. 808 (E.D.Mo.1982), *aff'd,* 728 F.2d 989 (8th Cir. 1984), the compensatory damage award was based on a violation of 42 U.S.C. § 1981, not Title VII.

In *Williams v. Trans World Airlines, Inc.,* 660 F.2d 1267 (8th Cir.1981), the court noted in dictum that damages for emotional suffering are appropriate under Title VII. Chief Judge Lay subsequently acknowledged that his statement in *Williams* was dictum and should be disregarded. *Muldrew, supra.* Judge Lay also noted in *Muldrew* that the damage award in *Williams* was based on the § 1981 claim, not on Title VII. Finally, although the district judge in *Beesley v. Hartford Fire*

*Insurance Co.*, 723 F.Supp. 635 (N.D.Ala. 1989), ruled that a successful claimant in a Title VII case would be entitled to emotional distress damages, the decision is of no precedential value and is based in part on a misreading of *Meritor Savings Bank, supra.*

In this case, although the trial court instructed the jury on the basic elements of both the state and federal claims, it then gave the following instruction:

If you find that the defendants discriminated in not hiring the plaintiff because of her race, and that plaintiff was damaged as a result of such discrimination then you shall award her compensatory damages which may include:

1. lost past wages which the plaintiff would have already earned had she received the job

2. lost future wages which she would have received as projected into the future if she had received the job

3. damages for the pain and suffering and emotional distress the plaintiff has experienced as a result of the defendant[s'] wrongful acts.

The court also instructed the jury as follows:

You are further instructed that plaintiff brought an action against the City of Tucson and Cressworth Lander based on the Arizona Civil Rights Act.

... If you find for the plaintiff, on the actions brought by her, based on state law, you may award judgment for compensatory damages as you determine them in favor of the plaintiff and against defendants, City of Tucson and Lander.

The jury returned a general verdict of $200,000 against both the City and the Landers for "compensatory damages."

Because of the nature of the jury instructions given and the fact that only a general verdict form was submitted to the jury, we have no choice but to presume that the jury included damages for emotional distress in its award. As a result of the court's commingling of the Arizona statutory claim based on Title VII and the § 1981 claim, the jury was thus improperly permitted to award Timmons damages for emotional dis-

tress against the City of Tucson even though those damages are not available under the only claim against the City. We conclude, therefore, that the judgment against the City of Tucson must be reversed and the case remanded for a new trial.

Because of that reversal, we must address other issues that are likely to arise again.

## JURY INSTRUCTIONS

 Jury instructions are considered in their entirety on appellate review. *Andrews v. Fry's Food Stores of Arizona,* 160 Ariz. 93, 770 P.2d 397 (App.1989). In determining whether the instructions given were correct, the test is "whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision." *Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 281, 486 P.2d 176, 179 (1971). When a party argues that a requested instruction should have been given, we look at the evidence in the light most favorable to the party who requested it. *Andrews, supra.* The trial court has a duty to instruct on all legal theories supported by the evidence. *Trus Joist Corp. v. Safeco Insurance Co. of America,* 153 Ariz. 95, 735 P.2d 125 (App. 1986). If there is any evidence tending to establish a party's theory, the party's requested instruction should be given. *Pioneer Roofing Co. v. Mardian Construction Co.,* 152 Ariz. 455, 733 P.2d 652 (App. 1986). It is not error for the court to refuse to give a requested instruction that is adequately covered by the instructions that are given. *City of Phoenix v. Brown,* 88 Ariz. 60, 352 P.2d 754 (1960).

*Affirmative Defense Instruction*

 Over the City's objection, the trial court gave the following instruction, one that was requested by Timmons:

An Affirmative Action Plan may constitute a defense for considering race in hiring only if Defendants prove that the hiring was done in accordance with the plan and that the race of the person

being given preference is under-represented in the work force as compared with the community.

Timmons argues that the instruction was warranted because the defense had been listed by the City in the joint pretrial statement, because the plan had been admitted into evidence by Timmons without objection, and because Lander and his assistant director had mentioned it in their testimony. We disagree.

Timmons has cited no authority for her contention that a party is bound by a defense raised in a pretrial statement that it abandons prior to trial. Nor does the fact that Timmons raised it as an issue in her opening statement mean that the City was obligated to rely on it as a defense. Timmons's argument ignores the case law that a jury instruction is warranted by the presentation of *evidence* supporting it, not by mention of it in a pretrial statement or in an opposing party's opening statement.

Nor do we find merit to Timmons's contention that the evidence justified the instruction. The admission into evidence of the affirmative action plan by Timmons does not support her claim that the City relied upon it as a defense. Although Lander did mention the plan five times in his testimony, two of those times were while he was being cross-examined by Timmons. On two occasions, Lander testified that under the plan, he could not hire a lesser qualified person. Two of his answers related essentially to procedural requirements of the plan. None of his testimony raised a defense that he had hired Sykes because of the City's affirmative action plan.

Timmons has cited us no authority for her unique contention that a plaintiff can determine the nature of her opponent's defense and insist that the jury be instructed accordingly. The cases hold that a party whose theory of the case is reflected in his or her requested instruction is entitled to have the instruction given. *Evans v. Pickett*, 102 Ariz. 393, 430 P.2d 413 (1967); *Pioneer Roofing Co., supra; Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982). That was not the case here. Despite Timmons's contention

to the contrary, we find no evidence was presented to support giving the defense instruction. *Ong v. Pepsi Cola Metropolitan Bottling Co.*, 18 Ariz.App. 457, 503 P.2d 415 (1972).

Moreover, the trial court refused to give the City's requested instruction on a defense it did raise. The City requested a mixed motive instruction based on the holding in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). There, the Court ruled that a defendant in a Title VII case can raise as an affirmative defense the fact that it would have made the same decision even if the improper classification had not been considered. We find no merit to Timmons's contention that the defense was raised in other instructions that were given; it was not.

Because the City was refused a jury instruction on a defense that had been properly raised and because the jury was instructed on a defense it did not raise, we conclude that reversible error occurred with regard to the Landers as well, also entitling them to a new trial.

We do agree, however, that the other instruction about which the City complains on appeal was adequately covered by the instructions that were given.

## SUBMISSION OF EQUITABLE CLAIMS TO THE JURY

 The City objected to the court's instructing the jury on the state civil rights claims, arguing that equitable relief is an issue only for the court. When both Title VII and § 1981 claims are pursued together, however, the Ninth Circuit permits the jury to consider all legal claims and all *issues* common to both claims. *Plummer v. Western International Hotels Co.*, 656 F.2d 502 (9th Cir.1981). In such cases, the jury's finding becomes advisory as to the equitable relief sought under Title VII, and the court may base its ruling on the Title VII claim on the common issues found by the jury. *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 353, 112

L.Ed.2d 317 (1990). The difficulty in the case at issue is that only a general verdict form was submitted to the jury, and the trial court treated all claims as legal in nature and the jury's verdict as binding on both claims. That approach to the case was improper.

### ATTORNEY'S FEE AWARD

█ Both parties have appealed from the award of attorney's fees to Timmons. Timmons sought fees of $119,140 based on a contingency fee agreement providing for enhanced hourly rates of $250. The enhanced fee was allegedly agreed upon because of the contingency of receiving any payment, the difficulty of employment cases in general, and the difficulty of discrimination cases in particular. The trial court awarded Timmons attorney's fees of $71,666.66, representing one-third of the $215,000 the jury awarded her. The City contends that the court erred in simply awarding Timmons a contingent fee, and Timmons contends on cross-appeal that the court improperly failed to enhance the award. We agree that the award was calculated on an improper basis.

Under either the federal or state civil rights statutory schemes, the determination of an attorney's fee award must begin with the calculation of the prevailing party's reasonable attorney's fees. Both statutes provide for an award of "a reasonable attorney's fee." 42 U.S.C. § 1988; A.R.S. § 41–1481(J).

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983), the Court observed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Other factors may then be considered. *Id.* The "lodestar" figure thus obtained is presumed to be the proper reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). "[E]nhancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." *Id.* at 728, 107 S.Ct. at 3088, 97 L.Ed.2d at 599. No such analysis was conducted in this case, and no specific findings were made by the court. If Timmons is successful upon a retrial, any attorney's fee award must be properly calculated and supported.

Because we remand for a new trial, we need not address the City's remaining issues nor the balance of Timmons's cross-appeal issues with one exception.

### DISMISSAL OF § 1981 CLAIM AGAINST THE CITY

█ The court granted the City's motion for a directed verdict and dismissed Timmons's § 1981 claim against the city based on the holding in *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). In that case, the Supreme Court ruled that a municipality cannot be held liable under the doctrine of respondeat superior for violations of 42 U.S.C. § 1981 by its employees. The Court held that liability under § 1981 can only be established by showing that the city has an official policy or custom of discrimination. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We agree with the trial court that Timmons did not produce any such evidence here.

Reversed and remanded for a new trial.

HATHAWAY and LIVERMORE, JJ., concur.