NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ESTATE OF JOE SNELL, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

KENNETH CHARLES MARTIN, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 17-0629
FILED 12-11-2018

Appeal from the Superior Court in Maricopa County
No.  CV2014-050563
The Honorable John R. Hannah, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Defendants/Appellants/Cross-Appellees*

Jaburg & Wilk, P.C., Phoenix
By Kathi M. Sandweiss, Kraig J. Marton
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

William F. Hyder, P.C. Scottsdale
By William F. Hyder
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1        Appellants Kenneth Charles Martin and his spouse appeal from the superior court's grant of summary judgment to Appellee Estate of Joe Snell ("Snell") on Snell's breach of contract claim.  Martin argues that parole evidence regarding the interpretation of the contract should have been presented to a jury and contests the attorney fees awarded against him.  Because the contract was not reasonably susceptible to Martin's proffered interpretation, we affirm that portion of the judgment.  However, we vacate and remand the portion of the judgment dealing with attorney fees because the superior court based the amount of the award on the agreement between Snell and his attorney rather than on the number of hours and value of time spent by Snell's attorney on the case.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In April 2008, Joe Snell and Charles Martin entered into an investment agreement ("Agreement").  In relevant part, the Agreement provides:

> Charles Martin hereby agrees to pay Joe Snell and or his estate a monthly return in the amount of 10%, for all monies invested.  Profits are to be paid monthly . . . .  Joe Snell will be responsible for reporting all profits, as he chooses, to the IRS as additional income . . . .  Joe Snell hereby agrees to give Charles Martin a 30 day notice on any and or all monies he wishes to withdraw from his investment.

Mr. Snell invested $100,000 with Martin, and that money was invested in a day-trading venture with two non-parties.  Martin subsequently made three monthly payments to Mr. Snell in the amounts of $10,000, $10,000, and $9,000.  Then, the day-trading venture stopped turning a profit and Martin stopped making payments.

¶3        Mr. Snell sued Martin for breach of contract, and eventually amended his complaint to add racketeering and fraud claims.  During the

course of the proceedings, Mr. Snell died and his estate was substituted as Plaintiff. Snell moved for summary judgment on the breach of contract claim, arguing that the Agreement provided for an unconditional monthly return. Martin did not dispute the validity of the Agreement, but contended that payments were conditioned on the day-trading venture making a profit.

¶4       The superior court agreed with Snell's interpretation, saying that the Agreement provided for an open-ended, guaranteed monthly return. Snell asked that the court award him damages in the amount of $100,000, plus $10,000 per month for all months from April 2008 to the date of judgment, minus the $29,000 Martin already paid. In the final judgment, the court awarded $1,178,741.92 in damages, consistent with Snell's request. It also awarded $325,686 in attorney fees, which was based on the hybrid fee agreement between Snell and his attorney, which provided for an hourly rate and a percentage of any judgment award. Finally, it dismissed Snell's fraud and racketeering claims, ruling that they were barred under the election of remedies statute.

¶5       Martin filed a timely notice of appeal, and subsequently asked this Court to stay the appeal so that he could file a motion under Arizona Rule of Civil Procedure ("Rule") 60(b). This Court granted his motion to stay. Martin then filed a motion for relief under Rule 60(b), which the superior court denied. Martin filed a supplemental brief, arguing that the superior court's denial of his Rule 60(b) motion was in error.

¶6       We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶7       We review de novo a grant of summary judgment and view the facts in the light most favorable to the party against whom summary judgment was entered. *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 140, ¶ 26 (App. 2006).

## I.       Breach of Contract

¶8       Martin argues that summary judgment was improper because the superior court should have allowed a jury to consider extrinsic evidence—his testimony—to interpret the Agreement. Snell cross-appealed, arguing that if this court reverses judgment on his breach of contract claim, we should also reverse the dismissal of his fraud and

racketeering claims. Because we affirm judgment on the breach of contract claim, we need not address Snell's cross-appeal.

¶9 Extrinsic evidence can only be used to aid in the interpretation of a contract if, after reviewing the evidence, the judge finds that the contract is "reasonably susceptible" to the interpretation asserted by the party propounding the extrinsic evidence. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993). However, extrinsic evidence cannot be "offered to contradict or vary the meaning of the agreement." *Id.* Thus, we must determine whether the Agreement is reasonably susceptible to Martin's interpretation. If it is not, we can "stop listening to evidence supporting it, and rule that its admission would violate the parole evidence rule." *Id.* at 155. We "need not waste much time if the asserted interpretation is unreasonable or the offered evidence is not persuasive." *Id.*

¶10 The Agreement states, "Charles Martin hereby agrees to pay Joe Snell and or his estate a monthly return in the amount of 10%, for all monies invested." In his declaration, Martin states that the parties agreed that payment "was conditioned upon profits being made from the underlying investment," and "Snell accepted that there was a risk that he would not be receiving a full return on his investment."

¶11 Martin's contention that the payments were conditioned on profits has no basis in the Agreement and is contrary to the terms of the Agreement. The Agreement mandates monthly payments and does not, either explicitly or implicitly, impose any condition on those payments. Rather than offering extrinsic evidence to provide a reasonable interpretation of "a monthly return in the amount of 10%," Martin proffers an interpretation that would rewrite the contract to eliminate the Agreement's fixed return. In addition, Martin's declaration was inconsistent with his 2014 deposition testimony in which he stated that he did not know whether Snell was aware of a risk of loss. Because the proffered interpretation is inconsistent with the language of the Agreement and the evidence is not particularly persuasive in light of the conflict between Martin's declaration and deposition, the superior court was correct to reject the evidence. *See id.*

¶12 Martin argues that because the Agreement is an investment agreement, and not a loan, it implies a risk that there may be no return. In support of this argument, Martin points to use of the terms "investment," "return," and "profits," in the Agreement. Specifically, Martin argues that the provision that Snell was responsible for "reporting all profits, as he chooses, to the IRS as additional income" (emphasis omitted) demonstrates

4

that the Agreement was an investment contract because repayment of a loan does not generate taxable income. However, characterizing the Agreement as an investment agreement rather than a loan does not imply that the promised return was contingent. *E.g.*, A.R.S. § 20-208 (defining "guaranteed investment contracts" in the insurance industry); A.R.S. § 44-1801(27) (defining "security" to include notes, bonds, and investment contracts); A.R.S. § 47-3104(J) (defining certificates of deposit as a "note" of the issuing bank). Moreover, interest paid on a loan is taxable income to the lender. *See* 26 C.F.R. § 1.61-7(a) ("As a general rule, interest received by or credited to the taxpayer constitutes gross income and is fully taxable.").

**¶13** Thus, because the Agreement unambiguously calls for an unconditional payment of return on monies invested, regardless of how characterized, it is not reasonably susceptible to Martin's interpretation. For these reasons, we affirm the superior court's grant of summary judgment on Snell's breach of contract claim.

**¶14** We need not address the parties' remaining arguments regarding the dead man's statute, A.R.S. § 12-2251, and judicial admissions given our decision.

## II.    Judgment Against Spouse

**¶15** Martin argues that Snell was not entitled to judgment against his spouse because there was no evidence that she participated in or benefitted from Martin's actions. "Generally, all debts incurred during marriage are presumed to be community obligations unless there is clear and convincing evidence to the contrary." *Cardinal & Stachel, P.C. v. Curtiss*, 225 Ariz. 381, 383, ¶ 6 (App. 2010) (quoting *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10 (App. 2000)). Martin did not present any evidence—much less clear and convincing—that the debts are not community obligations. In addition, Martin never raised this argument at the superior court. *See Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 27 (App. 2017) ("[T]his court generally does not consider arguments raised for the first time on appeal."). For these reasons, the superior court did not err by entering judgment against Martin's spouse.

## III.    Attorney Fees

**¶16** Snell requested and received attorney fees under A.R.S. § 12-341.01 in the amount agreed to in the fee agreement with his attorney. The fee agreement was a hybrid that provided for an hourly rate and a percentage of any judgment award.

¶17 Arizona's fee-shifting statute "allows an award of attorney's fees when a contingency-fee agreement is involved." *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 545 (1982); *see also* A.R.S. § 12-341.01. In such cases, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bogard v. Cannon & Wendt Elec. Co., Inc.*, 221 Ariz. 325, 336, ¶ 42 (App. 2009) (quoting *Timmons v. City of Tucson*, 171 Ariz. 350, 357 (App. 1991)). This product, sometimes termed a lodestar, "is presumed to be the proper, reasonable fee." *Id.*

¶18 When a contingency agreement is involved, the contingency agreement should not be used as the basis for an award. *See Crews v. Collins*, 140 Ariz. 80, 82 (App. 1984) ("Defendants' obligation is to pay reasonable attorney's fees. . . . The fee arrangement with plaintiff's counsel does not, per se, establish that the [contingency] fee . . . was reasonable. Evidence of reasonableness of the fee is necessary."). Instead, the agreed-upon contingency is a maximum amount that, under A.R.S. § 12-341.01(B), the superior court cannot exceed. *Cont'l Townhouses E. Unit One Ass'n v. Brockbank*, 152 Ariz. 537, 545-46 (App. 1986) (holding that the court "*may* award *up to*" the contingency amount).

¶19 Because the superior court awarded attorney fees under A.R.S. § 12-341.01, a fee-shifting statute, it should have determined the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Because the superior court based its award on Snell's fee agreement without performing this analysis, it erred. We remand for the superior court to re-determine the amount of fees. "In making its determination, the trial court should ascertain a reasonable billing rate for [Snell's] counsel's time and the hours reasonably expended on the case." *Burke v. Ariz State Ret. Sys.*, 206 Ariz. 269, 275, ¶ 19 (App. 2003) (holding that in a fee-shifting scenario, the trial court erred by awarding attorney fees based on a percentage of the judgment awarded).

## IV.    Rule 60(b) Motion

¶20 Martin also filed a supplemental brief addressing the superior court's denial of his Rule 60(b) motion. Martin's Rule 60(b) motion and briefing repeats the same arguments set forth in the summary judgment proceedings and the opening brief. In light of our decision upholding the superior court's judgment on Snell's breach of contract claim, we cannot say that the superior court abused its discretion in denying Martin's Rule 60(b) motion to set aside that judgment.

**CONCLUSION**

**¶21**        For the foregoing reasons, we affirm the judgment on Snell's breach of contract claim, but we vacate and remand judgment on the question of attorney fees.  Both parties asked that we award attorney fees on appeal.  In our discretion, we decline to award attorney fees on appeal.  We also decline to award costs on appeal because neither party was entirely successful.



AMY M. WOOD • Clerk of the Court
FILED:  AA