DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Ritchie Johnson has appealed from his conviction in the Wayne County Municipal Court. We affirm.
 I {¶ 2} On March 22, 2006, Appellant was charged with one count of aggravated menacing in violation of R.C. 2903.21. The charge against Appellant arose from the statements given by Jennifer Freeman, her daughter M.M., and Brian Buroker. These three individuals informed police that Appellant had threatened to shoot them on the evening of February 21, 2006. *Page 2 
 {¶ 3} Appellant pled not guilty to the charge against him and the matter proceeded to a jury trial on October 26, 2006. At the conclusion of the evidence, the jury found Appellant guilty of aggravated menacing. The trial court sentenced Appellant to 45 days in jail and placed him on community control for two years. Appellant has timely appealed his conviction, raising four assignments of error for review.
 II Assignment of Error Number One "THE TRIAL COURT COMMITTED EITHER STRUCTURAL OR PLAIN ERROR TO THE PREJUDICE OF MR. JOHNSON BY PROMPTING THE PROSECUTOR TO OBJECT TO EVIDENCE BEING ELICITED BY THE DEFENSE, THUS PRESENTING THE APPEARANCE OF AN IMPROPER BIAS TO THE JURY."
 {¶ 4} In his first assignment of error, Appellant has argued that the trial court erred by prompting the State to object to one of his questions. As Appellant failed to raise this issue below, he has argued that the trial court committed either plain error or structural error. Upon review, we find no error in the trial court's actions.
 {¶ 5} Appellant has relied upon the following colloquy that occurred during Morgan Matarko's cross-examination to support his argument:
 "Q. And do you know what the fight was about?
 "A. No
 "Q. Wasn't it about the fact that Ritchie . . . *Page 3 
 "THE COURT: Excuse me.
 "[Prosecutor]: I would object, Your Honor. I believe, would you like me to respond at this point?
 "THE COURT: Well, the objection is sustained."
Appellant has asserted that during this colloquy, the trial court gestured in a manner which prompted the State to raise an objection. Appellant, however, has conceded that the record before this Court is insufficient to demonstrate that such a gesture occurred.
 {¶ 6} In support of his argument, Appellant has maintained that the trial court's actions may have suggested some form of bias to the jury. Appellant has ignored the fact that "even in the absence of an objection, the trial court has the inherent authority to exclude or strike evidence on its own motion." Barrette v. Lopez (1999),132 Ohio App.3d 406, 417, citing Oakbrook Realty Corp. v. Blout (1988),48 Ohio App.3d 69; Neal v. Hamilton Cty. (1993), 87 Ohio App.3d 670. See, also,Allen v. Pine Top Estates (Dec. 18, 1985), 9th Dist. Nos. 12070, 12164, at *5. The trial court, therefore, was within its discretion to exclude evidence on its own motion. Consequently, assuming arguendo that the trial court's statement "Excuse me" prompted a response from the State, Appellant has shown no prejudice from such prompting as the evidence at issue could have been excluded by the Court without participation by the State in any manner. Specifically, the witness' response indicated that she had no personal knowledge of the nature of the fight at issue. Consequently, any further answers by the witness on that topic *Page 4 
would have been properly excluded as speculative. Moreover, Appellant has raised no argument suggesting that the evidence at issue was erroneously excluded.
 {¶ 7} Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two "PLAIN ERROR AFFECTING DUE PROCESS AND BASIC FAIRNESS OCCURRED WHEN THE PROSECUTOR MADE IMPROPER STATEMENTS OF LAW IN HER OPENING STATEMENT AND IMPROPER STATEMENTS OF PERSONAL OPINION IN HER CLOSING ARGUMENT."
 {¶ 8} In his second assignment of error, Appellant has asserted that the State engaged in prosecutorial misconduct by misstating the law in its opening statement and by improperly stating a personal opinion on credibility in its closing argument. We find no reversible error.
 {¶ 9} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors. Id., citing United States v. Hasting (1983), 461 U.S. 499, 508-509. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995), 72 Ohio St.3d 545, 557. In the instant matter, Appellant did not *Page 5 
object to the prosecutor's alleged misconduct during his closing argument. As such, Appellant has waived all but plain error regarding these comments. State v. Slagle (1992), 65 Ohio St.3d 597, 604.
 {¶ 10} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204, citing Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647. Furthermore, Appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78-79, overruled on other grounds.
 {¶ 11} Appellant has first asserted that the State committed misconduct when it stated as follows during opening statements:
 "[W]e are here today on a case of bullying. That's because on February 21st of 2006, Ritchie Johnson bullied another person, Jennie Freeman."
Contrary to Appellant's assertions on appeal, the State never asserted that Appellant was charged with a crime termed "bullying." Rather, the State used *Page 6 
colloquial terms to describe the evidence that it intended to present to the jury. We find no misconduct in the State's opening remarks.
 {¶ 12} Appellant has also alleged that the State improperly commented on his credibility during closing arguments. In its closing argument, the State claimed as follows:
 "Ritchie Johnson said that he felt scared, so he walked away. Yet, he's only two blocks away. He thought he was going to be shot and he's only two blocks away and he just waited there. I don't believe that's true, ladies and gentlemen. I don't believe that's, in fact, how anything went down. The person who has everything to lose here today, of course, that's what he's going to tell you."
Appellant has alleged that the above comments improperly comment on his credibility. In reviewing Appellant's claim, we note that
 "[i]t is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonably supports the characterization. However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside the record." (Internal citations omitted.) State v. Baker, 159 Ohio App.3d 462, 2005-Ohio-45, at ¶ 19.
 {¶ 13} In the instant matter, the State effectively called Appellant's testimony a lie, asserting that Appellant's story defied common sense. However, we recognize that the State's comments border on invading the province of the jury and appear to have given a personal belief about Appellant's guilt or credibility.
 {¶ 14} Assuming for the sake of argument that the State's argument was improper, Appellant has failed to demonstrate prejudice from such an error. The *Page 7 
jury was presented with evidence from three different witnesses that demonstrated Appellant's guilt. Consequently, Appellant cannot demonstrate that but for one statement regarding credibility in the midst of the State's closing argument that there is a reasonable probability that the outcome of his trial would have been different. Moreover, to the extent that Appellant has relied upon statements made after the verdict to support his argument, his reliance is improper. See generally Evid.R. 606(B); State v. Hessler (2000), 90 Ohio St.3d 108,123. For an unexplained reason, the trial court in this matter permitted counsel for both sides to ask and answer questions from jurors on the record after they returned their verdict. While informative to the parties, this session was improperly performed on the record. Appellant has cited to statements made by jurors in an attempt to support his argument that they harbored some doubt about his guilt. Juror testimony, however, is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. Evid.R. 606(B); Hessler,90 Ohio St.3d at 123. Appellant has presented no evidence aliunde and therefore may not rely upon the jurors' statements to attempt to impeach their verdict. See Wittman v. Akron, 9th Dist. No. 21375, 2003-Ohio-5617.
 {¶ 15} Consequently, Appellant has failed to meet his burden of demonstrating both error and prejudice. Appellant's second assignment of error lacks merit. *Page 8 
 Assignment of Error Number Three "THE COURT ERRED TO THE PREJUDICE OF DEFENDANT BY NOT PROPERLY CORRECTING A JUROR'S MISSTATEMENT AND MISUNDERSTANDING OF THE LAW."
 {¶ 16} In his third assignment of error, Appellant has alleged that the jury did not properly understand the charges against him. We disagree.
 {¶ 17} In this assignment of error, Appellant has not alleged that the trial court failed to properly instruct the jury regarding the charges against him. Rather, Appellant has taken issue with a statement made by a juror when the jury was polled regarding its verdict. When polled, one juror stated that her verdict was "Guilty of menacing." Appellant's counsel then requested the juror be polled further because Appellant had been charged with aggravated menacing. Upon request, the trial court specifically asked the juror if she had found Appellant guilty of aggravated menacing to which the juror responded that she had. As Appellant has not raised any argument regarding the jury instructions themselves and the record contains no evidence that the jury misunderstood the law contained in those instructions, Appellant's third assignment of error lacks merit.
 Assignment of Error Number Four "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} In his final assignment of error, Appellant has alleged that his conviction for aggravated menacing was against the weight of the evidence. This Court disagrees. *Page 9 
 {¶ 19} When considering a manifest weight argument, this Court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 20} Appellant was convicted of aggravated menacing in violation of R.C. 2903.21(A) which provides as follows:
 "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
"Knowingly" is defined as follows:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of *Page 10 
circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
Appellant has asserted that the jury clearly lost its way in concluding that he had knowingly caused Jennifer Freeman to believe that he would cause her serious physical harm. We disagree.
 {¶ 21} In support of its case, the State presented the testimony of Jennifer Freeman, her daughter M.M., and Brian Buroker. In his defense, Appellant relied upon his own testimony and that of his girlfriend, Jennifer Freeman's niece Alisa Campbell.
 {¶ 22} M.M. testified as follows. She was with her mother on February 21, 2006 at their residence at 736 Spink Street. Her cousin, Alisa Campbell, came to the house to remove her belongings. Prior to that date, Campbell had been living with Freeman. Campbell brought Appellant with her to the house. After roughly 45 minutes, Appellant told Alisa "to get moving" and Freeman responded that Alisa was her niece and she was permitted to speak with her. Appellant then began yelling at Freeman. M.M. testified that Appellant said "that, like, he was going to, he told everyone at the residence to stay there. He would be right back and that he was going to shoot us." M.M. interpreted this to mean that Appellant was going to return and shoot her, her mother, and their neighbor, Brian Buroker. M.M. testified that Appellant seemed angry with Buroker because he had become involved when Appellant began yelling at Freeman. Upon hearing the threats, *Page 11 
M.M. ran inside her home. M.M. then stayed the next two nights at a friend's home because she was scared that Appellant would return.
 {¶ 23} Jennifer Freeman testified as follows. She was on her porch with her daughter M.M. and she was speaking to her niece, Alisa. Appellant then told Alisa to "hurry up" and Freeman told him "politely to go away." Appellant then "started yelling saying he was going to send people to beat me down and shoot, he was going to come back and kill us. He was going to shoot us." Freeman stated that Appellant looked angry and aggressive when making these statements and that she was afraid of him following these statements.
 {¶ 24} Finally, the State presented the testimony of Brian Buroker who testified as follows. Buroker lived across the street from Freeman. On the day of the altercation, he was working on his car in the street in front of his home. He heard Appellant, Campbell, and Freeman yelling at one another. Appellant then asked Buroker if he "was standing guard and if [he] was big and bad[.]" Buroker told Appellant to leave the area. Appellant then "started threatening everybody." Appellant stated that "he was going to beat us down and he was going to handle us Wootown style. He was going to shoot us. He told us to wait there."
 {¶ 25} In support of his defense, Appellant testified as follows. He was walking with Campbell to Freeman's home to get her belongings. Upon approaching the house, Appellant saw Freeman across the street speaking to Buroker. Appellant then yelled to Buroker, "Guy why you staring at me like *Page 12 
this?" Buroker responded by saying, "Nigger, if you come over here I'm going to show you and put a hole in you." Appellant asserted that at the time of this statement, Buroker had his hand in the trunk of his car. Appellant then feared for his life and immediately retreated from the area and waited for Campbell roughly two blocks away. Appellant admitted that he may have referred to Buroker as a "bitch" during this altercation.
 {¶ 26} Finally, Alisa Campbell testified as follows. She walked to Freeman's home with Appellant. Upon arriving, she told Appellant to wait on the sidewalk while she retrieved her property from the porch. She then heard Buroker tell Appellant that "if you come across the street nigger I'm going to put a hole in you." Campbell and Appellant then walked away from the home with her belongings. Campbell testified that Appellant never threatened anyone in any manner. On cross-examination, Campbell stated that Appellant never said anything to Buroker on the night in question.
 {¶ 27} Upon review, we cannot say that the jury lost its way in finding Appellant guilty of aggravated menacing. Three different witnesses testified that Appellant threatened to shoot Jennifer Freeman. Both Freeman and her daughter testified that they were scared of Appellant because of the loud and aggressive manner in which he made his threats. While Appellant and Campbell testified to a drastically different account of events, Campbell's testimony was not consistent with Appellant's version of events. Appellant admitted to initiating the alleged *Page 13 
conversation with Buroker. Campbell, on the other hand, testified that Appellant never spoke to Buroker. As the jury was in the best position to judge credibility, we generally defer to their determination.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Herein, the jury's determination of credibility is consistent with the evidence. This Court, therefore, cannot conclude that the jury lost its way in finding that Appellant knowingly caused Jennifer Freeman to believe that he would cause her serious physical harm. Appellant's final assignment of error lacks merit.
 III {¶ 28} Appellant's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of *Page 14 
Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. MOORE, J., Concur. *Page 1