**Anna Marie HEYWOOD and Douglas A. Heywood, husband and wife, Plaintiffs,**

**v.**

**SAMARITAN HEALTH SYSTEM, an Arizona non-profit organization, Defendant.**

**No. CIV–93–1809–PHX–ROS.**

United States District Court, D. Arizona.

July 7, 1995.

under the Alaska counterpart to the federal act. *See, e.g.,* AS 23.10.145.

David C. Larkin, Phoenix, AZ, for plaintiffs.

Lonnie J. Williams, Jr., Snell & Wilmer, Christopher David Payne, Moore McCoy & Payne, Phoenix, AZ, for defendant.

## ORDER

SILVER, District Judge.

On September 12, 1993 Plaintiffs Anna Marie and Douglas A. Heywood filed with this Court a Complaint for retaliatory discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In this Complaint the Plaintiffs allege that Defendant Samaritan Health Systems discharged Anna Marie Heywood because she filed a complaint with the Equal Employment Opportunity Commission (EEOC). On October 4, 1994, Samaritan filed Defendant's Motion to Dismiss or in the Alternative Defendant's Motion for Summary Judgment. Plaintiffs responded and countered with their own Motion for Partial Summary Judgment raising the same issues.

### FACTS

Plaintiff Anna Marie Heywood alleges in her Complaint that she was employed by Samaritan Health Center of Glendale for seven years eleven months, concluding her employment in the position of Respiratory Therapist III. She alleges that she filed a charge of discrimination with the EEOC on August 20, 1991 and was discharged on December 2, 1991. On December 3, 1992, Plaintiffs filed a complaint in Maricopa County Superior Court alleging that Samaritan discharged Plaintiff Anna Marie Heywood in retaliation for filing the charge of discrimination and that the firing violated the Arizona Civil Rights Act (ACRA), Ariz.Rev.Stat. § 41–1461 et seq, as well as constituting the tort of wrongful discharge in violation of public policy. The complaint was tried before a jury on April 5, 1994 and they returned a verdict in favor of the Defendants. Plaintiffs' motion for a new trial was denied.

On February 6, 1995, a hearing was held on the Motions and the parties were given the opportunity to supplement their pleadings regarding issues raised by the Court both before and at the hearing on these Motions. Both parties supplemented their pleadings on February 10, 1995.

### STANDARD FOR SUMMARY JUDGMENT

In evaluating a summary judgment motion, the inquiry is whether, with respect to any dispositive issue, the pleadings and supporting materials show there is no genuine issue of material fact and, if not, whether viewing the evidence and inferences which may be drawn therefrom in a light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The moving party must produce evidence establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The absence of a genuine issue of material fact may be demonstrated by pointing out to the district court that "there is an absence of evidence to support the nonmoving party's case" on issues where the nonmoving party bears the burden of proof. *Id.,* 106 S.Ct. at 2554. Moreover, at the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

If the nonmoving party will bear the burden of proof at trial as to any element essential to its case, that party can withstand a motion for summary judgment only by making a showing sufficient to establish a genuine issue of fact regarding that element and a showing that the dispute properly may be resolved only by the fact-finder because it could reasonably be resolved in favor of either party. *Celotex Corp.,* 477 U.S. at 321–25, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S.

at 249, 106 S.Ct. at 2511. In order to make such a showing, the party opposing the motion must present specific facts in support of its contentions and must support these facts by proper evidentiary material, which when coupled with undisputed background and contextual facts, show that the fact-finder could reasonably find in his favor; the non-moving party cannot merely rest on his pleadings. Fed.R.Civ.P. 56(e). *See also T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987).

 Rules 56(a) & (b) allow, but do not require, the parties to file supporting affidavits with their motions. Rule 56(e) provides that the affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence and show affirmatively that the affiant is competent to testify. The Ninth Circuit has held that affidavits made on information and belief rather than on personal knowledge cannot be considered. *Conner v. Sakai,* 15 F.3d 1463, 1471 (9th Cir.1993). Furthermore, "[i]t is well established that unauthenticated documents cannot be considered in a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1990). A plaintiff seeking summary judgment who has failed to produce admissible evidence sufficient to support a finding upon every element of its claim of relief "is no more entitled to judgment than is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which it bears the burden of proof." *United States v. Dibble,* 429 F.2d 598, 601 (9th Cir. 1970). It is also accepted, however, that "[i]f a party fails to move to strike an affidavit that is allegedly defective under Rule 56(e), he waives any objection to it." *Allen v. Scribner,* 812 F.2d 426, 435 n. 18 (9th Cir. 1987). However, the court can disregard inadmissible material *sua sponte. United States v. Dibble,* 429 F.2d 598, 603 (9th Cir. 1970).

## DISCUSSION

 Defendant moved for summary judgment claiming that the Complaint is barred by the doctrines of *res judicata* and collateral estoppel because the legal and factual issues were fully litigated in Maricopa County Superior Court. In addition, in their reply, the Defendant contests the Court's earlier decision not to dismiss the case although the Complaint was not served within the 120 days allowed by Rule 4(j) of the Federal Rules of Civil Procedure. Rules 12(g) & (h) require that motions for insufficiency of service of process must be filed along with any other motions to dismiss. Here the issue was first raised in the reply to the Plaintiffs' response to the Defendant's motion to dismiss. This was clearly too late for the Plaintiffs to respond. Hence, the motion is waived. Plaintiffs' Motion for Summary Judgment raises/responds to the issues of *res judicata* and collateral estoppel.

### Res Judicata

 The Defendant seeks this Court to dismiss this case pursuant to the doctrine of *res judicata.* There are two issues encompassed within this claim. First, is the issue of whether an action in a state court can act as *res judicata* for a case in federal court. As set forth below, the answer is yes. The second issue is whether the state court proceedings in this case were such that they legally constituted *res judicata* in the present federal case.

1. *State Court Actions as Res Judicata in Federal Court Cases*

 In *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 476, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982), the Supreme Court held that Title VII did not preempt 28 U.S.C. § 1738, and required that federal courts give the same preclusive effect to state court judgments that would be given in the courts of the state where the judgment was rendered. *Id.* at 466, 102 S.Ct. at 1889. *See also Int'l Evangelical Church v. Church of the Soldiers,* 54 F.3d 587, 590 (9th Cir. 1995) ("We therefore, look to [the State] law to determine the effect of the judgment against International Church entered by the Superior Court of Los Angeles County."). Concomitantly, federal courts do not have exclusive jurisdiction over civil rights actions

brought under Title VII. Hence, it was proper to also institute this action in the Arizona State courts. *Yellow Freight System. Inc. v. Donnelly,* 494 U.S. 820, 821, 110 S.Ct. 1566, 1567, 108 L.Ed.2d 834 (1990).

The law in Arizona concerning *res judicata* has been summed up in a recent Arizona Court of Appeals case which states "[t]wo causes of action which arise out of the same transaction or occurrence are not the same for purposes of res judicata if proof of *additional* or *different facts* is required." *E.C. Garcia & Co. v. Arizona State Dept. of Revenue,* 178 Ariz. 510, 520, 875 P.2d 169, 179 (Ct.App.1993) (emphasis added). This test was reiterated in *Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (Ct.App.1982), where the court held that *res judicata* applied when the same critical facts must be proved in the first and second actions, and in *Pierpont v. Hydro Manufacturing Co., Inc.,* 22 Ariz.App. 252, 526 P.2d 776, 778 (1974), where the court wrote "[t]he true test of identity of causes of action, as the term is used in connection with the plea of *res judicata,* is the *identity of the facts essential to their maintenance* and such identity may appear from evidence in the two cases as well as from pleadings." (emphasis added)

The question is therefore whether the ACRA cause of action tried in Arizona State court and the present Title VII claim require proof of the same facts. The Ninth Circuit has held that the elements which must be proven to establish a *prima facie* case for retaliatory discharge are that (1) the plaintiff engaged in a protected activity; (2) the plaintiff was subject to an adverse employment action by her employer; and (3) that a causal link exists between the two. *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982); *Trent v. Valley Electric Ass'n, Inc.,* 41 F.3d 524, 526 (9th Cir.1994). The important issue is what is necessary to establish a causal connection between the protected activity and the employment action. Plaintiff cites *Cohen* which held that the plaintiff must prove that her employer acted, at least in part, with retaliatory intent or motive. *Cohen,* 686 F.2d at 798; *Davis v. State University of New York,* 802 F.2d 638, 642 (2nd Cir.1986). Later Ninth Circuit cases held

that Plaintiff must show by "a preponderance of the evidence that engaging in the protected activity was one of the reasons for firing and that but for such activity the plaintiff would not have been fired." *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1513 (9th Cir.1989) quoting *Ruggles v. California Polytechnic State University,* 797 F.2d 782, 785 (9th Cir.1986) quoting *Kauffman v. Sidereal Corp.* 695 F.2d 343, 345 (9th Cir.1982); *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1355 (9th Cir.1984) (The plaintiff must establish "by the preponderance of the evidence that engaging in a protected activity under § 2000e–3 was one of the reasons for termination and but for such activity a plaintiff would not have been fired.")

These cases proceeded *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which the United States Supreme Court held that, when a plaintiff in a Title VII case proves that gender played a part in an employment decision, the defendant may avoid a finding of liability by showing that it would have made the same decision even if the plaintiff's gender had not been taken into account. But in 1991 Congress amended Title VII in response to *Price Waterhouse.* Section 2000e–2(m) of Title 42 of the United States Code now provides:

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

In the house report on the bill which added this subsection it is stated that:

If Title VII's ban on discrimination in employment is to be meaningful, victims of proven discrimination must be able to obtain relief, and perpetrators of discrimination must be held liable for their actions. *Price–Waterhouse* jeopardizes this fundamental principle. As Judith Lichtman testified, the decision "sends the message that a little overt sexism or racism is okay as long as it is not the only basis for the employers action." ... Legislation is needed to restore Title VII's comprehen-

sive ban on all impermissible consideration of race, color, religion, sex or national origin in employment.

House Rep. No. 102–40(I) 47, reprinted in 1991(2) U.S.Code Cong. and Admin.News, pp. 549, 585. Thus, it is clear that Congress intended to invalidate the holding in *Price Waterhouse* by the enactment of § 2000e–2(m). It is not as clear, however, that the amendment was intended to affect the standards for determining whether *retaliatory* discharge has occurred. Retaliatory discharge is comprised in § 2000e–3(a), rather than § 2000e–2, and the specific language of the amendment, and of the House report, do not include retaliation. However, it is certainly reasonable to assume that the Congressional policy articulated in the amendment and in the House report, reaches retaliation as well as the enumerated considerations.[1]

The effective date of the changes made by the Civil Rights Act of 1991 was November 21, 1991 and the Supreme Court has held that several provisions of the Act are not retroactive. *McKnight v. General Motors Corp.*, —— U.S. ——, 114 S.Ct. 1826, 128 L.Ed.2d 655 (1994); *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Although the Supreme Court has not specifically addressed the retroactivity of § 2000e–2(m), it is reasonable to assume that it also is not retroactive.

Retroactivity, however, is not a relevant consideration in this case because Plaintiff was discharged on December 2, 1991 allegedly in retaliation for an earlier complaint filed with the E.E.O.C. This is after the effective date of the change in the statute. Therefore it is clear that, in federal court, Heywood would only be required to prove that retaliation was a motivating factor for the discharge.

There is no case law defining the elements of retaliatory discharge under the Arizona Civil Rights Act (ACRA). However, the jury instructions given in the state action establish precisely which facts were required to be proven by the Plaintiff. The elements of the ACRA charge as set out by the trial judge in the instructions were that the jury must find: (1) that the reason Samaritan terminated Anna Marie Heywood was to retaliate against her for filing a charge of discrimination against Samaritan; and (2) that Samaritan at the time could not have properly terminated Anna Marie Heywood. (Page 8 of 8 of Jury Instructions, which is Exhibit A of Plaintiffs' Response to Motion to Dismiss and Plaintiffs' Countermotion for Partial Summary Judgment Pursuant to FRCP 56(c)) Thus, under this instruction, Heywood was required to prove that retaliation was the only reason for her discharge.

This appears to be consistent with the then exiting Arizona law. The Arizona Court of Appeals has held that, when the defendant has proffered a defense based on the claim that it would have discharged the employee for non-discriminatory reasons, a defendant is entitled to a jury instruction stating that a defendant may avoid liability for discrimination if it proves by a preponderance of the evidence that it would have made the same decision for non-discriminatory reasons. *Timmons v. City of Tucson*, 171 Ariz. 350, 356, 830 P.2d 871, 877 (Ct.App.1991). This, of course, is the precise holding of *Price Waterhouse*, which was the federal law governing Title VII actions before the 1991 amendments. Because Arizona has not

---

1. *See* 2 Lex K. Larson, *Employment Discrimination*, § 35.04[1] "This is important because the 'mixed motive' clause of the CRA does apply to retaliation cases. The section does not state this explicitly, but the mixed motive clause defines the conditions under which an 'unlawful employment practice' is established. The antiretaliation provision of Title VII appears under the specific heading of '[o]ther unlawful employment practices.' To date, no court has ruled on this issue, but the EEOC has issued a notice concurring with this interpretation."

Plaintiffs claim that if the amendment does not apply to retaliation claims, the standard in *Cohen* applies. However, as noted above, Ninth Circuit cases *after Cohen* applied a "but for" test in determining causation, which requires that the Plaintiff show that but for the retaliatory motive Plaintiff would not have been discharged. This is more stringent than the *Cohen* standard and closer to the standard applied by the state trial court.

amended its statute since *Timmons*, this law is still valid.

However, the holding of the Arizona Court of Appeals in *Timmons* differs from the jury instruction given by the Maricopa County Superior Court in the Heywood matter. The trial court instruction placed the burden on the Plaintiff to prove that retaliation was the only reason for her discharge, whereas the Arizona Court of Appeals' holding in *Timmons* places the burden on the Defendant to establish that a Plaintiff would have been discharged in any event.

▇▇▇ The difference in the law set forth in *Timmons* and the jury instruction given is irrelevant. Arizona courts have held that even an erroneous judgment has preclusive effect between the parties. *Fraternal Order of Police v. Superior Court*, 122 Ariz. 563, 596 P.2d 701, 703 (1979); *Secrist v. State*, 2 Ariz.App. 240, 242, 407 P.2d 781 (1965); *Shattuck v. Shattuck*, 67 Ariz. 122, 192 P.2d 229, 234 (1948). Hence, it follows that the elements set forth by the Arizona trial court in the jury instructions define the cause of action which this Court must examine to determine whether the present federal court action is precluded by *res judicata*. If this were not the case, the parties would be in the anomalous position of being precluded from litigating a cause of action requiring proof of facts which the trial court judge did not require them to prove in the earlier action. This is despite the possibility that the facts may well result in a reversal of the trial court's decision.

▇▇▇ Therefore, it is clear that in the State court ACRA proceeding the Plaintiff was required to prove "additional or different" facts from which she must now prove in the present federal proceedings i.e., that Defendant had a single motive for the discharge which was discrimination which is not required in federal court. Pursuant to Title VII, a retaliatory motive need only be one factor leading to discharge. Therefore *res judicata* cannot be a basis for granting the Defendant summary judgment.[2]

## 2. COLLATERAL ESTOPPEL

The Defendant claims that, even if *res judicata* does not apply, the Plaintiffs are still bound by the factual determinations of the state court under the doctrine of collateral estoppel or what is commonly referred to as issue preclusion.

The decision in *Kremer* also holds that federal courts must treat issues as collaterally estopped if they would be collaterally estopped in the courts of the state where the earlier decision was rendered. *McInnes v. State of California*, 943 F.2d 1088, 1092–93 (9th Cir.1991); *Trujillo v. Santa Clara County*, 775 F.2d 1359, 1363 (9th Cir.1985).

Arizona courts have held that there are five conditions which must be met before collateral estoppel can be applied to an issue: (1) the issue must have actually been litigated in the previous proceeding; (2) there must be a full and fair opportunity to be heard on the issue; (3) the resolution of the issue must be essential to the determination made in the

**2.** This decision, however, is problematic. It is important to note that evidence of *other motives* for discharge is relevant to the determination of damages in federal court. 42 U.S.C. § 2000e–5(g)(2)(B). Therefore, facts concerning whether there were other reasons for discharge *may* be introduced as part of a Title VII case. The parties have not raised this issue. The Court will therefore not address it other than to point out that it could effect the decision regarding whether "additional or different facts" are presented in the federal case. They might be the same. However, they may also be different because establishing liability rather than the measure of damages may require different facts. Another issue in determining whether the facts presented on damages in federal court are considered the same cause of action for *res judicata* is who has the burden of proving the facts. This issue,

again, was not addressed by the parties and the Court will not decide it but notes that in *Hoff v. City of Mesa*, 86 Ariz. 259, 344 P.2d 1013 (1959), the Arizona Supreme Court held that "an existing final judgment rendered upon the merits ... is conclusive as to every point raised by the record which could have been decided with respect to the parties and their privies in all actions in the same or any other judicial tribunal of concurrent jurisdiction." This implies that it does not matter which party introduces the evidence, but only whether evidence of necessary facts is in the record. *See Shaw v. Hahn*, 56 F.3d 1128 (9th Cir.1995) where the Ninth Circuit held that under the doctrine of claim preclusion "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."

previous case; (4) there must have been a valid and final decision on the merits in the previous case; and (5) the parties must be the same in both cases. *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 174, 745 P.2d 617, 622 (App.1987); *Chaney Building Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). The Defendant argues that two critical issues were litigated in the State court proceeding in which the jury found against the Plaintiff which are now required to be proven by the Plaintiff in the present case and vital to her success in this proceeding. Those issues are retaliation and the requirement that the Plaintiff submit her claims to arbitration before she could initiate any litigation.

■■■ Defendant claims that the arbitration clause in Plaintiff, Anna Marie's, employment contract, if she failed to comply with it, would preclude her from recovering in either the Arizona state or federal employment cases. The problem with the Defendant's claim is that because the jury in the State case rendered a general verdict, rather than answering special interrogatories, it is unclear from the record presented to this Court that the jury in finding against the Plaintiff found that she did not comply with the arbitration provisions or whether the jury found that she had failed to meet the burden of proving that discharge was retaliation. Defendants argue that, even if it cannot be conclusively determined whether the jury found that Plaintiffs failed to arbitrate or that Plaintiffs had not proved all of the elements of the ACRA retaliation claim, the jury must have found one or the other, and either one would preclude further litigation under the doctrine of collateral estoppel. However, because, as discussed under *res judicata,* the ACRA retaliation claim heard requires proof of additional or different facts from the Title VII claim, (in the State case the Plaintiff, Anna Marie, was required to prove that retaliatory motive was the *only* reason for discharge), if the State jury based its decision on Plaintiff's failure to prove retaliation, their decision would not preclude the federal retaliation or arbitration issues. In other words, if the jury found (which we cannot discern from the records) that she failed to meet her Arizona State burden on

retaliation, which is different than her federal burden, there is no issue preclusion. Thus, the Arizona State court verdict does axiomatically preclude the arbitration and/or federal retaliation issues. This reasoning is supported by the Restatement (Second) of Judgments § 27, comment i, which states that when the first decision is based on the determination of two issues, either of which could be sufficient, it is not conclusive with respect to either issue alone.

Defendant's argument regarding wrongful discharge is somewhat problematic. Defendant claims that because the jury did not find that the Defendant wrongfully discharged Plaintiff it must have found that the Defendant did not in any respect retaliate against her. This is supported by the instruction given to the jury which reads in pertinent part:

> In this case you may find that Samaritan violated public policy only if you find in accordance with these instructions that Plaintiff proved that Samaritan discharged Anna Marie Heywood in retaliation for her filing a charge of discrimination against Samaritan.

(Attached as Ex. A to Plaintiff's Response to Motion to Dismiss.)

This position would indeed preclude the issue of retaliation in the federal court case if there was a *separate* verdict for wrongful discharge (which is not clear from the record presented to the Court) and if "in accordance with these instructions" (see instruction above) did not incorporate the definition of retaliation under the ACRD action which required the Plaintiff to prove that retaliation was the *only* reason for discharge. This is not clear as a matter of law from the record.

Defendant's argument on collateral estoppel therefore fails.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss or in the Alternative Defendant's Motion for Summary Judgment (Doc. # 8) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' Countermotion for Partial Summary Judgment Pursuant to FRCP 56(c) (Doc.

# 12), on the issue of res judicata and collateral estoppel, is granted.