[Cite as *Wholf v. Tremco, Inc.*, 2015-Ohio-171.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100771

---

## WILLIAM WHOLF

### PLAINTIFF-APPELLANT

vs.

## TREMCO INCORPORATED, ET AL.

### DEFENDANTS-APPELEES

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-779194

**BEFORE:** E.T. Gallagher, J., Celebrezze, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 22, 2015

**ATTORNEYS FOR APPELLANT**

Matthew D. Greenwell
Charles V. Longo
Charles V. Longo Co., L.P.A.
25550 Chagrin Boulevard
Suite 320
Beachwood, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Sue M. Douglas
Amy Ryder Wentz
Robert M. Wolff
Littler Mendelson, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, William Wholf ("Wholf"), appeals an order granting summary judgment in favor of defendants-appellees, Tremco Incorporated ("Tremco"), Edward Nowak, and Timothy Sworney (collectively "appellees"). We find merit to the appeal and reverse the trial court's judgment.

{¶2} Tremco manufactures and sells roofing installation and weatherproofing services for buildings such as schools, hospitals, and manufacturing facilities. As part of its warranty program, Tremco provides on-site roofing inspections and preventative maintenance services, which are supported through an Online Information System ("OLI"). Wholf worked in Tremco's OLI department from January 3, 2006, until his resignation on May 20, 2011.

{¶3} Following his resignation, Wholf filed a complaint against Tremco in which he asserted two claims. In Count 1, a retaliation claim brought pursuant to R.C. 4112.02(I), Wholf alleged that (1) he engaged in a protected activity when he reported sexual harassment to company managers, (2) appellees were aware of the protected activity, (3) appellees took adverse actions against him, and (4) the protected activity was the cause of Tremco's adverse actions against him. Count 2 alleged intentional infliction of emotional distress.

{¶4} Appellees filed a joint motion for summary judgment on Wholf's claims. The facts, as set forth in affidavits and deposition testimony, are as follows: Tremco hired Wholf in 2006 as its primary OLI trainer under the title OLI Sales/Customer Support Manager. Employees in the OLI department receive roof inspection reports from field personnel and enter the information into online databases that customers may access to review detailed roofing inspection data and repair recommendations. OLI's objective is to increase the number of customers and sales representatives who understand and use the OLI. Wholf was primarily

responsible for training customers and Tremco sales representatives on how to use OLI so that customers could understand and use the system. Wholf was also supposed to identify and contact customers and sales representatives who would benefit from OLI and offer them training.

{¶5} Wholf reported to the Inspection and Maintenance Service Manager. In 2010, Tremco hired Edward Nowak ("Nowak") as the new Inspection and Maintenance Services Manager. From 2006 through 2010, Wholf received positive performance evaluations from his previous and current supervisors.

{¶6} Sometime after Nowak joined Tremco, some female employees complained that Nowak made sexually suggestive comments to them and stared inappropriately at their breasts. One of the alleged victims was Melissa Wholf ("Melissa"), Wholf's wife, who worked part time performing data entry. At a Tremco-sponsored luncheon on November 4, 2009, Nowak stared at Melissa's breasts for an extended period of time. Employees at the table commented on Nowak's behavior, but he did not seem to hear them and continued staring. Melissa felt uncomfortable and raised a menu to hide her breasts in an effort to end the situation.

{¶7} Tremco's non-harassment policy defines "harassment" as "any unwelcome or unsolicited verbal, visual, written, sexual or physical conduct that creates or contributes to a hostile or offensive work environment." "Leering" is included as an example of harassment under the policy. The non-harassment policy provides that "if an employee observes or becomes aware of actual or perceived harassment of another employee, then the observing employee should immediately report the matter to a supervisor, manager, or officer (up to and including the President of the Company)." When harassment is reported, the policy provides that "Tremco will investigate all complaints promptly, thoroughly and fairly," and "[n]o retaliation of any kind * * * will be taken against an employee for making a complaint."

{¶8} On February 9, 2010, Nowak met with Wholf to discuss his inappropriate use of time spent fixing coworkers' computers instead of completing his assigned work. During this meeting, Wholf confronted Nowak about his conduct, which he believed violated Tremco's non-harassment policy, and secretly recorded the conversation. According to Wholf, Nowak ignored the allegations and continued to make inappropriate comments and leer at women's breasts. In March 2010, Wholf reported Nowak's conduct to a Tremco vice president, who reported the allegations to James Tierney ("Tierney"), Tremco's former General Counsel and Vice President of Human Resources. Meanwhile, Lisa Garcia ("Garcia"), another supervisor in the OLI department, reported harassment allegations from two other women to Tremco's Human Resources Manager, Karen Halkovics ("Halkovics"). Tierney informed Halkovics of Wholf's complaint at about the same time. As a result, the human resources department led an internal investigation into the complaint.

{¶9} Halkovics interviewed the alleged victims; Melissa, Garcia, and Val Giampietro to hear their versions of the facts. She also met with Maureen Greeves, another Tremco manager who worked with Nowak, to see if she had any similar experiences, but she had not. Halkovics met with Nowak, informed him of the complaints and advised him that the reported behavior was unacceptable. Halkovics also counseled Nowak on Tremco's non-harassment policy. There is no evidence that any more harassment occurred after Halkovics's investigation and meeting with Nowak.

{¶10} Wholf was nevertheless frustrated by what he believed was an inadequate investigation and reported the harassment to the "NETWORK" in June 2010. According to the non-harassment policy, the NETWORK is "an independent and autonomous service devoted to collecting and reporting employee complaints regarding practices and behaviors that may be

unethical or in violation of Company policies." In the NETWORK complaint, Wholf stated that "Nowak has been making inappropriate and unwelcomed sexual comments" and "has also been caught starring [sic] at female employee's breasts." He further complained that the lack of investigation may have been impacted by Halkovics's personal relationship with Jim Solether ("Solether").[1] A week later, Wholf sent Randall Korach ("Korach"), then President of Tremco, an anonymous email once again reporting Nowak's conduct and the ineffectual investigation.

{¶11} In response to the NETWORK complaint and the anonymous emails, Tierney met with Korach, and spoke with Halkovics and Solether about their alleged affair. Tierney also retained outside counsel to review Halkovics's previous investigation. Following the review of the investigation, Tierney completed a report and sent it to RPM International Inc., Tremco's parent company, as required practice when a NETWORK complaint is made.

{¶12} Wholf testified at deposition that after he complained about Nowak's harassing behavior, he "felt a backlash" from Nowak beginning in March or April 2010. Wholf asserted that Nowak reassigned some of his projects to other employees and excluded him from meetings. Consequently, Wholf informed Todd Sworney ("Sworney"), Tremco's Drafting Supervisor, that he believed Nowak was retaliating against him for reporting his harassing behavior even though Nowak gave Wholf a positive performance evaluation in late May 2010.

{¶13} In November 2010, Solether reorganized the management structure of the company. The OLI production department was reorganized such that Sworney became the supervisor of quality control and training personnel, and Garcia became the supervisor of data entry personnel. Nowak informed Wholf that Sworney would be his new supervisor, and

---

[1] Jim Solether is Tremco's Director of Business Operations. Wholf believed Halkovic and Solether were involved in a romantic relationship.

removed some of Wholf's core responsibilities and reassigned them to other employees. Prior to this change, Wholf and Sworney were equally ranked in management. As part of the reorganization, Wholf's former job title, OLI Sales-Customer Support Manager, was changed to OLI Sales-Customer Coordinator. Solether testified that at the time of the reorganization, he had no knowledge of any harassment complaints lodged against Nowak.

{¶14} On November 5, 2010, Sworney instructed Wholf that, in addition to his regular duties, he was now required to keep a detailed daily time sheet to account for his time throughout the day. Sworney's goal was for Wholf to generate enough outside interest in OLI training that he could train on a full-time basis. However, Wholf did not meet Sworney's production goals and did not increase his training workload. On November 11, 2010, Nowak informed Wholf that due to budget cuts, Tremco would no longer reimburse his personal cell phone, which he had used for work-related business.

{¶15} In December 2010, Sworney instructed Wholf that he must devote half of his workday to data entry. Two weeks later, Sworney placed Wholf on a "Performance Improvement Plan" ("PIP"), because he was not meeting his daily data entry quotas. The PIP subjected Wholf to more supervision by Sworney and Halkovics. In response, Wholf created an "action plan" to address concerns raised in the PIP. In the plan, Wholf stated that Sworney was motivated to issue the PIP by discrimination, retaliation, and workplace harassment. On January 27, 2011, Tremco lowered Wholf's job grade from level 10 to level 9. Although his salary was not affected, his bonus eligibility was reduced by the potential amount of $1,300.

{¶16} Wholf complained to Tierney that he believed Sworney was retaliating against him. Tierney questioned Sworney about Wholf's retaliation claims and subsequently convinced Sworney to lower Wholf's data entry quota from 50 forms per half-day to 40 forms per half-day.

Tierney also assigned another Human Resources Manager to work with Sworney and Wholf on the PIP, instead of Halkovics, whom Wholf did not trust.

{¶17} On February 15, 2011, Sworney informed Wholf that he would be assuming another employee's responsibilities while she was on maternity leave. These responsibilities included closeouts and mail for the OLI department. "Mail" involved receiving large bankers boxes full of roof-inspection forms, which had to be opened, logged into several databases, and folders created for each form. Closeouts entail tallying all the time worked on the roof-inspection forms and closing out that job in various databases. Wholf's PIP was modified to reflect these additional responsibilities.

{¶18} On April 15, 2011, Sworney expressed concerns that Wholf was not meeting the expectations listed in his PIP. On May 3, 2011, Wholf was offered a position with another company. Wholf submitted a two-week notice to Sworney in which he stated that the harassment and retaliation against him resulting from his complaints about Nowak forced him to leave the company.

{¶19} The trial court granted appellees's motion for summary judgment and found that Wholf failed to establish that the alleged retaliation was the "but-for" cause of appellees's adverse employment action. It also found there was no evidence to support his intentional infliction of emotional distress claim because appellees's alleged actions were not "extreme and outrageous." Wholf does not appeal the judgment on his intentional infliction of emotional distress claim. He appeals the judgment in appellees's favor on his retaliation claim and raises two assignments of error.

**Standard of Review**

{¶20} We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

### The "But-For" Causation Standard

{¶21} In the first assignment of error, Wholf argues the trial court erroneously applied the "but-for" causation standard articulated in *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. __, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), to his retaliation claim. He contends the court should have applied the less stringent "motiving factor" causation standard that he claims courts applied prior to *Nassar*.

{¶22} In *Nassar*, the United States Supreme Court defined the applicable causation standard for employment retaliation claims brought pursuant to Title VII, 42 U.S.C. 2000 et seq. ("Title VII"), as amended by the Civil Rights Act of 1991 ("1991 Act"), 105 Stat. 1071. Title VII defines the term "unlawful employment practice" as discrimination based on any one of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about discrimination. *Nassar* at 2517.

However, five of the seven prohibited discriminatory actions relate to employer actions based on the employee's status and are governed by 42 U.S.C. 2000e-2(m) ("2000e-2(m)"). "The text of § 2000e-2(m) says nothing about retaliation claims." *Nassar* at 2528.

{¶23} Title VII's anti-retaliation provision appears in 42 U.S. 2000e-3(a) ("2000e-3(a)") and states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice under this subchapter, or because he has made a charge in any manner in an investigation, proceeding, or hearing under this subchapter.

Commenting on this language and the general statutory structure, the *Nassar* court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Nassar* at 2517. The "but-for" standard requires proof that the unlawful retaliation would not have occurred if the employee had not engaged in protected anti-discrimination activity. *Id*. at 2529. The employee's protected activity must "have had a determinative influence on the outcome." *Id*. at 2525.

{¶24} Ohio courts have held that since Ohio's antidiscrimination laws contained in R.C. Chapter 4112 are modeled after Title VII, "federal case law interpreting Title VII * * * is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 12. *See also Robinson v. Quasar Energy Group LLC*, 8th Dist. Cuyahoga No. 101062, 2014-Ohio-4218, ¶ 18.

{¶25} Nevertheless, Wholf contends R.C. 4112.02 is different from Title VII in several respects. First, he observes that while Congress intentionally separated status-based discrimination claims from conduct-based retaliation claims in two separate provisions of Title

VII (2000e-2(m) and 2000e-3(a)), both types of claims are set forth in a single section of the Revised Code (R.C. 4112.02(I)). Wholf argues that Title VII has a complex statutory structure that distinguishes between "status-based" and "conduct-based" discrimination claims, whereas Ohio's anti-retaliation provision is located in the same section that prohibits status-based discriminatory practices.

{¶26} Second, Wholf argues that R.C. 4112.02 is more broadly worded than its federal counterpart. Unlike Congress's 1991 amendment to the Civil Rights Act of 1964, which adopted a "motiving factor" causation standard, Ohio's Chapter 4112 does not contain a "mixed motives" provision. The absence of "mixed motives" language in R.C. 4112.02(I) is central to our discussion.

{¶27} However, the difference in statutory structure between the federal and Ohio anti-discrimination statutes has little or no relevance. Indeed, the General Assembly separated status-based discrimination claims from retaliation claims in separate subsections of R.C. 4112.02. And, despite Wholf's argument to the contrary, Ohio's anti-retaliation provision is nearly identical to Title VII's anti-retaliation provision. Title VII's anti-retaliation provision states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment * * * *because* he has opposed any practice made an unlawful employment practice by this title, or *because* he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. 2000e-3(a) (emphasis added). R.C. 4112.02(I) states, in relevant part:

> It shall be an unlawful discriminatory practice * * *
>
> (I) For any person to discriminate in any manner against any other person *because* that person has opposed any unlawful discriminatory practice defined in this section or *because* that person has made a charge, testified, assisted, or

participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

(Emphasis added.)

{¶28} In contrast to these provisions, Title VII's "mixed motives" provision, which applies to status-based discrimination claims, states in relevant part:

Impermissible consideration of race, color, religion, sex, or national origin in employment practices. Except as otherwise provided in this title [42 U.S.C. 2000e et seq.], an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin *was a motivating factor for any employment practice, even though other factors also motivated the practice*.

42 U.S.C. 2000e-2(m) (emphasis added).

{¶29} The word "because" appears in both the Ohio and federal anti-retaliation provisions but does not appear in Title VII's "mixed motives" provision. Applying the ordinary meaning of the word "because," the *Nassar* court concluded that 2000e-3(a) "makes it unlawful for an employer to take adverse employment action against an employee 'because' of certain criteria." *Nassar*, 133 S.Ct. 2517 at 2528, citing *Gross v. FBL Fin. Serv. Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Therefore, the plain language of R.C. 4112.02(I) provides a "cause-in-fact" causation standard rather than a mixed-motives standard.

{¶30} Anti-discrimination jurisprudence further compels this conclusion and informs the application of the "but-for" standard to employment retaliation claims. The starting point for analyzing this issue is the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the court prescribed "the order and allocation of proof in a private, non-class action challenging employment

discrimination."[2]  *Id.* at 972.   In *McDonnell Douglas*, the Supreme Court outlined the three-step

burden-shifting framework known as the *McDonnell Douglas* test, which applies in cases where

there is no direct evidence of discrimination.[3]  Under the *McDonnell Douglas* framework, the

plaintiff must first establish a prima facie case of discrimination.   *Id*. at 802.   If the plaintiff

makes a prima facie case, the burden of production shifts to the employer to articulate some

legitimate, nondiscriminatory reason for the employment decision.   *Id.* at 802-803.   If the

employer successfully meets this burden, then the burden shifts back to the plaintiff to show, by a

preponderance of the evidence, that the proffered reason was really a pretext for unlawful

discrimination.   *Id.* at 804.

{¶31} In *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981), the court elaborated on the burden shifting framework and explained that

plaintiff's initial "burden of establishing a prima facie case of disparate treatment is not onerous."

*Id.* at 253.   The plaintiff is not required to conclusively establish all the elements of his

discrimination claim in the prima facie case because the prima facie case simply creates a

presumption of discrimination that forces the employer to produce evidence of a legitimate,

non-discriminatory reason for the adverse employment action.   *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

{¶32} In *Hicks*, the court further explained that once the employer produces some

evidence in its defense "(whatever its persuasive effect), * * * the trier of fact proceeds to decide

---

[2] The *McDonnell Douglas* framework was adopted by this state in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983).

[3] Direct evidence is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.   *Mauzy v. Kelly Servs. Inc.*, 75 Ohio St.3d 578, 583, 664 N.E.2d 1272 (1996).

the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against him because of his [protected trait]." *Id*. at 510. Thus, the plaintiff's burden in the first stage of the *McDonnell Douglas* framework is one of production, not persuasion, but the plaintiff must ultimately prove all the elements of a retaliation claim by a preponderance of the evidence. *McDonnell Douglas* at 802-804; *Burdine* at 253.

**{¶33}** One of the most important discrimination cases concerning the applicable causation standard in retaliation cases is *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Price Waterhouse*, the court was asked to determine whether a Title VII plaintiff could prevail on a sex discrimination claim if she established that her gender was a factor in the adverse employment action when the employer was able to demonstrate that legitimate non-discriminatory factors also played a role. *Price Waterhouse* presented a situation where both legitimate and discriminatory reasons, i.e, "mixed motives," motivated the adverse employment decision.

**{¶34}** The *Price Waterhouse* court held that,

> in cases where the plaintiff offers "direct evidence" of unlawful discrimination and evidence as a whole permits a conclusion that both permissible and impermissible considerations played a role in the employer's decision, the plaintiff need only show that the unlawful motive was a *substantial motivating factor* in that decision. If the finder of fact concludes that the plaintiff has carried this burden, the burden of persuasion shifts to the defendant to prove that the unlawful motive was not a but-for cause, i.e., that the same action would have been taken, because of legitimate considerations, in the absence of the unlawful motive.

*Harris v. Giant Eagle, Inc.*, 133 Fed.Appx. 288, 296 (6th Cir.2005), quoting *Miller v. Cigna Corp.*, 47 F.3d 586, 594 (3d Cir.1995)(en banc)(emphasis added in *Harris*).

**{¶35}** Thus, the *Price Waterhouse* court held that once there is direct evidence that the protected trait was a motivating factor in the adverse treatment of the employee, the employer

could escape liability if it could show, by a preponderance of the evidence, that it would have taken the same action even in the absence of the protected trait or activity. *Id*. at 249. The court explained that "[a] court that finds for a plaintiff under this standard has effectively concluded that an illegitimate motive was a 'but-for' cause of the employment decision." *Id*., citing *Mt. Healthy City Bd. Of Edn. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Givhan v. W. Line Consol. School Dist.*, 439 U.S. 410, 417, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

{¶36} In response to *Price Waterhouse*, Congress passed the 1991 Act, which added the "motivating factor" language to 2000e-2(m) and lowered the plaintiff's evidentiary burden in Title VII employment discrimination cases. As previously stated, under the 1991 Act, courts could find liability for plaintiffs who could demonstrate a protected trait was a motivating factor in the adverse employment action even though the employer could also demonstrate it would have taken the same action regardless of the protected trait. 42 U.S.C. 2000e-2(m). Therefore, while an employer could completely avoid Title VII liability under *Price Waterhouse* if it could demonstrate a legitimate, non-discriminatory reason for the adverse employment action, the employer could no longer escape liability under the 1991 Act under the same circumstances.

{¶37} It was clear the 1991 Act applied to status-based discrimination claims, but Congress did not indicate that it applied to retaliation claims. Most courts continued to apply the standard articulated in *Price Waterhouse* to retaliation claims because retaliation claims were not included in 2000e-2(m), which contains the "motivating factor language." *See Kubicko v. Ogden Logistics Serv.*, 181 F.3d 544 (4th Cir.1999); *McNutt v. Bd. of Trustees*, 141 F.3d 706 (7th Cir.1998); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 932-936 (3d Cir.1997), *cert. denied*, 139 L.Ed.2d 230, 118 S. Ct. 299 (1997); *Tanca v. Nordberg*, 98 F.3d 680, 682-685 (1st Cir.1996), *cert. denied*, 137 L.Ed. 2d 333, 117 S.Ct. 1253 (1997); *Riess v. Dalton*, 845 F.Supp. 742,

744-745 (S.D. Cal.1993); *Norbeck v. Bais Elec. Power Coop*, 215 F.3d 848 (8th Cir.2000). *See also Lewis v. Young Men's Christian Assn.*, 208 F.3d 1303, 1305 (11th Cir.2000) (holding that the 1991 Act does not apply to a dual motive retaliation claim under ADEA).[4]

{¶38} Until recently, Ohio courts have not defined a particular causation standard to be applied in either status-based or conduct-based discrimination actions, and no Ohio court has expressly held that retaliation claims survive where there is evidence that legitimate factors played a role in the adverse employment action.  And no Ohio court defined the "but-for" causation standard until the Tenth District released *Smith v. Ohio Dept. of Public Safety*, 10th Dist. Franklin No. 12AP-1073, 2013-Ohio-4210.

{¶39} Nevertheless, Ohio case law preceding *Nassar* applied the "but-for" causation standard to retaliation claims.  *Wharton v. Gorman-Rupp Co.*, 309 Fed.Appx. 990, 998-999 (6th Cir.2009).  In *Wharton*, the Sixth Circuit Court of Appeals, applying Ohio law, held that in order for a plaintiff to prevail on a retaliation claim brought pursuant to R.C. 4112.02(I), she must establish that her protected activity was *the* reason for the adverse employment action taken against her.

{¶40} The employee in *Wharton* conceded that her retaliation claim was based on circumstantial evidence.  The court applied the *McDonnell-Douglas* framework and concluded that the employee established her prima facie case of retaliation.  It also determined there were

---

[4]  A few courts applied the motivating factor standard to retaliation claims brought pursuant to 42 U.S.C. 2000e-3(a).  *See, e.g., Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir.1996); *Beinlich v. Curry Dev. Inc.*, 4th Cir. No. 94-1465, 1995 U.S.App. LEXIS 12109 (May 22, 1995); *Heywood v. Samaritan Health Sys.*, 902 F.Supp. 1076 (D. Ariz. 1995). However, these cases were criticized or later reversed within their own circuits.  For example, the Seventh Circuit overruled *Veprinsky* and adopted a "but for" causation standard.  *See, e.g., Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir.2010).  In *Woodson*, the Third Circuit also criticized *Veprinsky*, along with *Beinlich* and *Heywood* for lack of analysis.  *See Woodson*, 109 F.3d 913, 915 at n.27.

genuine issues of fact as to whether the employer's stated reason for the adverse employment action was a pretext. *Wharton* at 999. Accordingly, the Sixth Circuit reversed the district court's order granting summary judgment to the employer.

**{¶41}** The *Wharton* court, like most Ohio courts, did not discuss the causation element of the prima facie case in any detail. Instead, it determined that the employer could be held liable because it failed to produce evidence of a nondiscriminatory motive for the adverse action. Had the employer established a legitimate, nondiscriminatory reason for its action, it would have avoided liability under R.C. 4112.02(I). *Id*. at 999. Thus, the *Wharton* court was still applying the "but-for" causation standard articulated in *Price Waterhouse* to retaliation claims when it released its decision in 2009.

**{¶42}** In 2013, the United States Supreme Court decided *Nassar,* 570 U.S. __, 133 S.Ct. 2517, 186 L.Ed.2d 503, and held that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in 2000e-2(m). *Id*. at 2533. Despite Wholf's argument to the contrary, the "but-for" standard articulated in *Nassar* is not a new standard; it is a clarification of the standard that has been applied in retaliation cases since the Supreme Court decided *Price Waterhouse* in 1989. *See, e.g., Lascu v. Apex Paper Box Co.*, 8th Dist. Cuyahoga No. 95091, 2011-Ohio-4407, ¶ 27 (once employer has articulated a valid, nondiscriminatory rationale for retaliatory action, burden shifts to employee "to prove that discrimination was the real reason for the discharge."); *Wittman v. Akron*, 9th Dist. Summit No. 21375, 2003-Ohio-5617 (expressly applying *Price Waterhouse* to retaliation claim).

**{¶43}** It is important to note that *Nassar* does not mention the term "prima facie case," nor does it refer to the *McDonnell Douglas* burden shifting framework. However, as previously explained, the plaintiff's evidentiary burden of establishing a prima facie case in the

first step of the burden-shifting analysis is one of production, not persuasion, and it is not "onerous." *Burdine*, 450 U.S. at 255-256. *Burdine* has not been overruled by any United Supreme Court decision. Therefore, pursuant to *Burdine*, the plaintiff is not required to *conclusively* prove all the elements of his claim at the prima facie stage of the burden-shifting analysis. Under *Nassar*, the plaintiff must ultimately prove, by a preponderance of the evidence, that the plaintiff's protected activity was the determinative factor in the employer's adverse employment action.

{¶44} As previously stated, Title VII's "mixed motives" provision applies to "status-based" discrimination claims. That is not the issue here. Wholf has brought a retaliation claim pursuant to R.C. 4112.02(I), which is almost identical to 2000e-3(a). Therefore, federal case law interpreting that section, including the "but-for" causation standard defined in *Nassar*, is applicable to Wholf's retaliation claim.

{¶45} Accordingly, the first assignment of error is overruled.

**Prima Facie Case of Retaliation**

{¶46} In the second assignment of error, Wholf argues the trial court erred in summarily dismissing his retaliation claim because he produced sufficient evidence to establish a genuine issue of material fact that appellees retaliated against him because of his participation in protected activities in violation of R.C. 4112.02(I). This assigned error calls for the application of the "but-for" causation standard within the *McDonnell Douglas*–Burdine burden shifting framework.

{¶47} There is no dispute that Wholf engaged in protected activity when he reported sexual harassment, or that appellees knew he engaged in protected activity. Nor do appellees challenge the adverse employment action element of Wholf's retaliation claim. The sole issue is

whether Wholf established the requisite causal connection between the protected activity and the adverse action to survive summary judgment. As previously stated, Wholf was not required to conclusively establish the causation element of his claim at the first stage of the *McDonnell Douglas* test; he was only required to produce evidence demonstrating that appellees took adverse employment action against him because of his participation in protected activity.

{¶48} Appellees argue Wholf cannot establish the causation element of his prima facie case because the adverse action occurred before the protected activity. Appellees contend Wholf's surreptitious recording of his February 9, 2010 meeting with Nowak established that the protected activity occurred after the alleged retaliatory acts. Wholf accuses Nowak on the recording of retaliating against him by "lea[ving] [him] out of everything," and pushing "him out" of "[a]nything to do with training." Therefore, appellees conclude, the recording proves Nowak began excluding Wholf from projects and meetings before he engaged in any protected activity.

{¶49} However, Wholf continued to engage in protected activity over the next several months and endured additional adverse employment actions. After Wholf confronted Nowak about the harassment at the February 9, 2010 meeting, he reported the harassment to a vice president of the company in March 2010. (Wholf Depo. 84, Tierney Depo. 34.) Despite Wholf's generally positive performance evaluation in May 2010, Wholf testified that he was suspicious of the evaluation and questioned Nowak's motive for some of the favorable remarks. He explained:

> Well * * * obviously, you can see I got some exceeds in here, successfuls. * * *
> [w]ork is performed as assigned and is done on time, you know. So overall, a
> good review.

Understand, though, Ed's a very smart man. Now, it would have been dumb for him to give me a completely bad review and then say, Well, it's just — that's how I view your work.

So instead, since it was almost review time anyways when this started, I get an appropriate review, which is * * * good, and then I start getting pushed off of projects, transferred to a new supervisor. And then within, you know, a month or so of being * * * under Tim Sworney, I'm on a performance evaluation.

**{¶50}** When asked what problems Wholf was having before his evaluation, he explained:

Just the avoidance. You know, I felt like I was starting to get pushed out of some projects, but not formally. You know, it just felt like a little backlash from my conversation with him.

**{¶51}** Wholf was frustrated by what he believed was an inadequate response to Nowak's harassment. In June 2010, Wholf made a NETWORK complaint about Nowak, Solether, and Halkovics to the Ethic and Compliance Employee Hotline. (Wholf Depo. 160.) This was the first time Wholf complained about Solether and Halkovics's conduct. The NETWORK complaint alleged not only Nowak's sexual harassment but also Halkovics's failure to properly investigate Wholf's original complaint because her investigation "may have been impacted by a personal relationship between Karen Halkovics and Jim Solether." A week later, Wholf sent the President of Tremco an anonymous email once again reporting Nowak's conduct and the feeble investigation.

**{¶52}** Following Wholf's complaints, in October 2010, Nowak informed Wholf that his title was going to be changed from manager to coordinator, a label that signifies less responsibility. At this time, Nowak (1) removed Wholf from his position as "Project Leader on all OLI enhancements," (2) removed Wholf as the "Project Leader on EDGE (Electronic Data Gathering Equipment) Project," and (3) removed Wholf as the "liaison to [the] IT Department from Sales Representatives & Customers." (Nowak Depo. at 114-123, Wholf Depo. at 204-207, 218-221.)

{¶53} Nowak also added the phrase "perform other duties as assigned" to Wholf's job description, and Sworney, formerly Wholf's equal, became his immediate supervisor. Sworney required Wholf to keep a daily time log to account for every minute of his workday. No one else within the OLI production department was required to keep daily time sheets. Pursuant to the new job description, Wholf was responsible for mail and closeouts in addition to daily data entry quotas. Wholf testified that these assignments could not realistically be completed by the end of each workday. When Wholf failed to meet Sworney's expectations, he was placed on a PIP. Therefore, despite appellees' argument to the contrary, there is evidence to show that adverse employment action was taken after Wholf first complained in February 2010.

{¶54} Obviously, the less time that passes between the protected activity and the retaliatory action, the more conspicuous the causal connection. Nevertheless, "retaliation has been found when termination followed the protected activity by over one year." *Smith v. Superior Prod.*, 10th Dist. Franklin No. 13AP-690, 2014-Ohio-1961, ¶ 33, citing *Harrison v. Metro. Govt. Of Nashville*, 80 F.3d 1107, 1119 (6th Cir.1996), *overruled on other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 (6th Cir.1999).

{¶55} Several months elapsed between Wholf's first complaint of harassment to Nowak in February 2010 and his apparent demotion from manager to coordinator and data entry worker in November 2010. However, Wholf continued to lodge complaints against Nowak and made his first complaints against Halkovics and Solether during this nine-month period. Indeed, appellees' retaliatory acts became increasingly more harsh as Wholf persisted with his complaints. We therefore find there is a genuine issue of material fact as to whether appellees retaliated against Wholf because of his protected activity.

**{¶56}** Wholf established his prima facie case of retaliation by producing evidence of his protected activity and of the adverse employment actions that were taken against him because of those activities. The trial court erroneously imposed the burden on Wholf to conclusively prove the causation element in his prima facie case, when his initial burden only required production of some evidence as to each element of the prima facie case. Therefore, the trial court misapplied the "but-for" standard of causation in this case, and as a result, erroneously concluded that Wholf failed to establish his prima facie case of retaliation in the first stage of the *McDonnell Douglas* analysis.

**{¶57}** The second assignment of error is sustained.

**{¶58}** Judgment reversed and remanded to the trial court for further proceedings.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
MELODY J. STEWART, J., CONCUR